Steven L. Yarmy, Esq.
Nevada Bar No. 8733
2595 S. Torrey Pines Drive
Las Vegas, Nevada 89146
(702) 586-3513
(702) 586-3690 FAX
sly@stevenyarmylaw.com
*Attorney for Plaintiff/Debtor*

# UNITED STATES BANKRUPTCY COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| In re: | Adv. No.: |
| NATIVE ENERGY FARMS, LLC, | Case No.: 14-13482-ABL |
| Debtor | Chapter 11 |
| _____ | **ADVERSARY COMPLAINT FOR DECLARATORY RELIEF AND TO QUIET TITLE** |
| NATIVE ENERGY FARMS, LLC, | |
| Plaintiff, | |
| v. | |
| COASTAL BAND OF THE CHUMASH NATION, a California Non-Profit Corporation; SOUTHERN CHUMASH OWL CLAN, a California Unincorporated Association; CHEVRON USA, INC., a Pennsylvania Corporation; and all persons unknown, claiming any legal or equitable right, title, estate, lien, or interest in the property described in the complaint adverse to Plaintiff's title, or any cloud on Plaintiff's title thereto; and DOES 1 through 20 inclusive, et al, | |
| Defendants | |

COMES NOW, Debtor and Plaintiff, NATIVE ENERGY FARMS, LLC ("Plaintiff or NEF"), and files this Complaint for Declaratory Relief and to Quiet Title and presents unto the Court as follows:

1.      This court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 151, 157 and 1334(b).

2.      Venue is proper pursuant to 28 U.S.C. §1409.

3.      This adversary proceeding is a core proceeding as defined at 28 U.S.C. §157(b)(2)(A), (B) and (M). This is a core proceeding pursuant to 28 U.S.C. § 157(b), and 28 U.S.C. §1334, 28 U.S.C. § 2201, and for declaratory relief and 28 U.S.C. §1367 for pendent state claims.

### PARTIES

4.      Plaintiff is a Nevada Limited Liability Company, and debtor within the captioned bankruptcy case, having filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code, and at all times mentioned herein is the owner and purchaser of real property located at APN: 081-140-023  ("Property"). The legal description of said property is:

That portion of the Rancho Nuestra Senora Del Refugio in the County of Santa Barbara, State of California, according to the United States patent thereof recorded July 28, 1866, in Book "A" of Patents, Page 17, et seq., records of said County, described as follows:

Beginning at the Westerly terminus of that certain course in the Northerly line of the land described in the deed to Robert L. Waldron, et al., recorded June 22, 1970, as Instrument Number 16018, in Book 2312, Page 274 of Official Records of said County, having a bearing and distance of "South 82º 22' 10" East, 323.88 feet";

Thence 1st, S. 82º 22' 10" E., along said Northerly line, 323.88 feet to an angle point therein;

Thence 2nd, N. 42º 21' 00" E., continuing along said Northerly line, 145.00 feet to an angle point therein;

Thence 3rd, N. 88º 45' 00" E., continuing along said Northerly line, 70.00 feet to an angle point therein;

Thence 4th, S. 55º 58' 37" E., continuing along said Northerly line, 251.10 feet to an angle point therein;

Thence 5th, N. 84º 43' 18" E., continuing along said Northerly line, 355.88 feet to an angle point therein;

Thence 6th, N. 67º 49' 32" E., continuing along said Northerly line, 182.00 feet to angle point therein;

Thence 7th, N. 58º 05' 58" E., continuing along said Northerly line, 313.85 feet to an angle point therein;

Thence 8th, S. 88º 33' 58" E., continuing along said Northerly line, 320.35 feet to an angle point therein;

Thence 9th, S. 67º 10' 28" E., continuing along said Northerly line, 257.39 feet to an angle point therein;

Thence 10th, S. 33º 31' 32" E., continuing along said Northerly line, 337.08 feet to an angle point therein;

Thence 11th, S. 6º 20' 40" W, continuing along said Northerly line, 151.33 feet to an angle point therein;

Thence 12th, S. 69º 12' 50" E., continuing along said Northerly line, 453.10 feet to an angle point therein;

Thence 13th, leaving said Northerly line, S. 74º 05' 19" E., a distance of 1016.41 feet to a 1/2-inch iron pipe with tag marked "PLS 6167";

Thence 14th, S. 20º 22' 06" E., a distance of 265.90 feet a 1/2-inch iron pipe with tag marked "PLS 6167";

Thence 15th, S. 22º 37' 56" E., a distance of 137.48 feet to a 1/2-inch iron pipe with tag marked "PSL 6167";

Thence 16th, S. 4º 25' 19" E., a distance of 17.77 feet to a 1/2-inch iron pipe with tag marked "PLS 6167";

Thence 17th, S. 22º 15' 50" W., a distance of 15.83 feet to a 1/2-inch iron pipe with tag marked "PLS 6167";

Thence 18th, S. 37º 13' 11" W., a distance of 12.43 feet to a 1/2-inch iron pipe with tag marked "PLS 6167";

Thence 19th, S. 47º 40' 28" W., a distance of 14.42 feet to a 1/2-inch iron pipe with tag marked "PLS 6167";

Thence 20th, S. 58º 38' 26" W., a distance of 27.23 feet to a 1/2-inch iron pipe with tag marked "PLS 6167";

Thence 21st, S. 76º 54' 49" W., a distance of 170.73 feet to a 1/2-inch iron pipe with tag marked "PLS 6167";

Thence 22nd, N. 78º 16' 07" W., a distance of 1441.00 feet to a 1/2-inch iron pipe with tag marked "PLS 6167";

Thence 23rd, S. 25º 58' 01" W., a distance of 449.87 feet to a 1/2-iron pipe with tag marked "PLS 6167";

Thence 24th, N. 79º 59' 39" W., a distance of 505.37 feet ot a 1/2-inch iron pipe with tag marked "PLS 616";

Thence 25th, N. 89º 15' 07" W., a distance of 793.83 feet to a 1/2-inch iron pipe with tag marked "PLS 6167";

Thence 26th, N. 25º 49' 22" W., a distance of 1468.16 feet to the point of beginning.

5.    Plaintiff as the Debtor in Possession has standing to bring this action pursuant to 11 U.S.C. § 323 and § 1107.

6.    Defendant Coastal Band of the Chumash Nation with its listed address of 315 N SOLEDAD ST, SANTA BARBARA CA 93103. It may also be served through the registered agent at TONI CORDERO, 4764 ASHDALE ST, SANTA BARBARA CA 93110.

2.    Defendant SOUTHERN CHUMASH OWL CLAN, a California unincorporated association with its address 48825 SAPAQUE VALLEY ROAD, Bradley, CA 93426.

3.    Defendant Chevron USA, Inc. is a Pennsylvania Corporation with its principal headquarters address listed with the California Secretary of State as 6001 BOLLINGER CANYON RD V2322, San Ramon, California 94583. And its registered agents address is The Prentice-Hall Corporations Systems, Inc., 2710 GATEWAY OAKS DR STE 150N, Sacramento, California 95833.

4.    The Defendants herein named as "all persons claiming by, through, or under such person, all persons unknown, claiming any legal or equitable right, title, estate, lien, or interest in the property described in the complaint adverse to Plaintiff's title thereto" ("Unknown Defendants") are unknown to Plaintiff.  These Unknown Defendants, and each of them, claim some right, title, estate,

lien, or interest in the Property adverse to Plaintiff's title; and their claims, and each of them, constitute a cloud on Plaintiff's title to the Property.

## **ALLEGATIONS COMMON TO COMPLAINT**

5.      An actual controversy has arisen and now exists between plaintiff and defendants concerning their respective rights and an interest in land and restrictive deeds mentioned above in that plaintiff contends that the restrictive covenants in instrument numbers 99-021850 and 99-021851 are void, against public policy, burdensome on plaintiff's land, and that defendant failed to file a power of termination within five years from a breach of covenants that were breached in June 2005.

6.      On October 29, 2013, Plaintiff purchased property from Southern Chumash Owl Clan free and clear of any restrictions, claims or interest and absolute title was conveyed.

7.      On or about July 7, 2014, Plaintiff received a title report from WFG Title. On the same date Plaintiff became aware of discriminatory restrictive covenants and restrictive covenants prohibiting the property from being used for commercial, industrial or residential purposes, which affects title to Plaintiff's property and are burdensome and of zero benefit to the property and its legal owners. Additionally, there is a reverter clause that, should the original grantee [Coastal Band of Chumash Nation] breach the discriminatory covenants the property would revert back to Chevron.

8.      Chevron has not sought a power of termination despite breaches of the "use covenants", which occurred more than 8 years ago. The property has been used for commercial purposes by the Coastal Band ("CBCN") since June 2005, and prior to the transfer to Southern Chumash Owl Clan; this property was often used for storage of vehicles and flea markets or junk sales rendering its use commercial.

9.      Chevron maintains an idle plant of some sort within one mile of the Plaintiff's property, which has no apparent activity and only a skeleton crew working to maintain what is on that site.

10.     In the early 1980's Norman Paulsen the founder of Sunburst Natural Foods, Inc. swapped to the Coastal Band of the Chumash Nation fka the Brotherhood of the Tomol ("CBCN") a 20 acre parcel of land that had favorable zoning and was not zoned agriculture but commercial or industrial. Chevron was assembling a series of parcels, which included the 20 acre parcel that was traded/swapped with the CBCN. Chevron was attempting to build a Plant, which was ultimately built. The current plant of Chevron is approximately one mile from the Debtor's subject property and appears to be not in operation as of the date of this complaint.

11.     The purpose of these restrictions appears to be a burial ground in the southern portion of the property, which is protected by Agreement and by SBa 1954. However, a lot line adjustment was done to protect specific property (the "Burial Ground") and appears to have surreptitiously, included the entire parcel of land. Based upon the agreement dated February 24, 1994, which is an "Agreement for and Declaration of Protective Covenant" which was recorded in the real property records of Santa Barbara County, California as instrument number 94-037784 on May 3, 1994, this agreement only purports to restrict the protected portion of the property but not the entire parcel. See Exhibit A.

12.     On or about September 14, 1998, Chevron then made the necessary lot line adjustments and recorded the Corporation Grant Deed on March 18, 1990 as instrument number 99-021850. See Exhibit B. This deed contains discriminatory covenants and burdensome restrictive use covenants that are against public policy and were not of any benefit to the original Grantee, the Land, or the current owner. The restrictions appear to have only benefited Chevron. Chevron in sum received unrestricted property of value and traded property of zero value as long as the restrictions were present. These restrictions were never contemplated in the Original Agreement mentioned in paragraph 9 above. No consideration of value was ever given to CBCN by Chevron for the restrictions.

13.    On or about September 14, 1998, CBCN quit claimed to Chevron and recorded the Quit Claim Deed on March 18, 1990 as instrument number 99-021851. See Exhibit C. This deed contains discriminatory covenants and burdensome restrictive use covenants that are against public policy and were not of any benefit to the original Grantee, the Land, or the current owner. The restrictions appear to have only benefited Chevron. Chevron in sum received unrestricted property of value and traded property of zero value as long as the restrictions were present. These restrictions were never contemplated in the Original Agreement mentioned in paragraph 9 above.

14.    Additionally, Chevron duped CBCN into granting Chevron oil, gas, and other mineral rights, which have never been put to any beneficial use. Plaintiff seeks to void and quiet title and strike the entire deed recorded as instrument number 99-021851.

15.    On September 14, 1999, CBCN and Chevron entered into a Water Use Agreement, which Chevron has never put to beneficial use and as such the agreement is of no benefit to Chevron or Plaintiff, but restricts Plaintiffs use to its well on the property that is currently capped. See Exhibit D. Plaintiff seeks to quiet title and void the water use agreement recorded on March 18, 1999 as instrument number 99-021853.

16.    The Deeds mentioned in paragraphs 12 and 13 includes a reverter clause, which this complaint seeks to void and quiet title to Plaintiff.

17.    The restrictions in paragraphs 1 and 2 of instrument number 99-021850 do not increase the property value.

18.    Today the property value with the restrictions has a value of $0.00. Without the restrictions the property has a land value of $5,000,000.00 based upon an appraisal conducted May 1, 2013.

19.     The highest and best use for the subject property is for residential use and is its only zoned use as ascertained by the Santa Barbara County Article II Coastal Zoning Ordinance published January 2014.

20.     An action for violation of a restriction, as defined in Cal. Civ. Code § 784, must be commenced within five years [Cal. Code Civ. Proc. § 336(b)]. Under § 784, "restriction" means a limitation on, or provision affecting, the use of real property in a deed, declaration, or other instrument, whether in the form of a covenant, equitable servitude, condition subsequent, negative easement, or other form of restriction [Cal. Civ. Code § 784].

21.     The Original Agreement of the parties was to only restrict the portion of property where in fact a small Indian burial plot was known in the southern portion of the property. A lot line adjustment was subsequently accomplished and a protective covenant was duly recorded. However, looking at the deeds filed in 1999 unreasonably burdens the entire property, which the burial plot is not even a part of the current parcel.

22.     Reversion clauses generally are disfavored and therefore are interpreted strictly to prevent their exercise. See, e.g., *Springmeyer v. City of S. Lake Tahoe*, 132 Cal. App. 3d 375, 380-82, 183 Cal. Rptr. 43 (1982).

23.     A declaratory relief action is an appropriate means to test the enforceability of covenants or servitudes asserted against the plaintiff's property. *Marra v. Aetna Construction Co.* (1940) 15 Cal. 2d 375, 377, 101 P.2d 490; *Ross v. Harootunian* (1967) 257 Cal. App. 2d 292, 294, 64 Cal. Rptr. 537; see Code Civ. Proc. § 1060.

24.     Restrictions in the form of otherwise valid equitable servitudes may be terminated by a court's determination that, for equitable reasons, the restrictions should no longer be enforced. See *Hess v. Country Club Park* (1931) 213 Cal. 613, 614–616, 2 P.2d 782 (declaratory judgment); *Marra v. Aetna Construction Co.* (1940) 15 Cal. 2d 375, 377, 101 P.2d 490 (quiet title).

25.     Decisions in California Courts have been interpreted that a burdensome covenants contained in a deed which in no way benefits the property conveyed is not binding at law upon the transferees of the grantee. See *Los Angeles Terminal Land Co. v. Muir*, 136 Cal. 36 [68 Pac. 308]; *Breese v. Dunn*, 178 Cal. 96 [172 Pac. 387]; *Werner v. Graham*, 181 Cal. 174 [183 Pac. 945]; 4 So. Cal. L. Rev. 343, 355. Since the restrictions involved here are of no conceivable benefit to the property, it is clear that they are not binding upon the Plaintiff at this time.

26.     Plaintiff asserts that the restrictions in the Deeds mentioned above are personal in nature and based upon the language in the Deeds only bound CBCN and did not intend to have any binding effect beyond the immediate parties to the instruments.

27.     Determination of whether a covenant is personal, runs with the land, or is enforceable as an equitable servitude rests on the resolution of factual matters such as intent, notice, and equitable factors. *McCaffrey v. Preston*, 154 Cal. App. 3d 422, 436, 201 Cal. Rptr. 252 (1984).

28.     For a covenant to be binding it must benefit the property. But not one that burdens the property. The covenants described in the deeds do not enhance or increase the value of the land.

29.     Covenants which burden the covenantee/grantee's land will not bind subsequent transferees. See *Taormina Theosophical Community, Inc. v. Silver* (1983, Cal App 2d Dist) 140 Cal App 3d 964, 190 Cal Rptr 38, 1983 Cal App LEXIS 2581.

30.     For covenants to be enforceable they must meet the following requirements: (1) the covenant must concern some act on the covenantor's property; (2) the covenant must be for the benefit of the covenantee; (3) the covenant must state it is binding on the assigns of the covenantor, and (4) the covenantor and covenantee must be owners of the land at the time the covenant is made.

31.     Plaintiff asserts that none of these elements were ever met in the original deeds restricting such use.

32.    It is unlawful to discriminate through public or private land use practices, decisions, and authorizations because of race, color, religion, sex, gender, gender identity, gender expression, sexual orientation, familial status, marital status, disability, genetic information, national origin, source of income, or ancestry. Discrimination includes, but is not limited to, restrictive covenants. See Cal. Gov. Code § 12955(l).

33.    The restrictions in the deeds mentioned above restrict the property based upon religion, race, national origin and ancestry and are thus illegal restrictions.

34.    The breach of these restrictions is premised upon the property being only used for the Chumash people and origin for their religious purposes.

35.    Plaintiff is not Chumash.

36.    The Coastal Band of Chumash Nation, Inc. is not a federally recognized Native American Indian tribe.

37.    The Southern Chumash Owl Clan, a California unincorporated association is not federally recognized Native American Indian tribe.

38.    See Exhibit E for a list of Native American Tribes that are recognized in the most recent Federal Register published, but the organizations in paragraph 33 and 34 are not listed.

39.    An actual controversy has arisen and now exists between plaintiff and defendants concerning their respective rights and an interest in land and restrictive deeds mentioned above in that plaintiff contends that the restrictive covenants in instrument numbers 99-021850 and 99-021851 are void, against public policy, burdensome on plaintiff's land, and that defendant failed to file a power of termination within five years from a breach of covenants that were breach in 2005.

///

///

///

## FIRST CLAIM FOR RELIEF

## DECLARATORY RELIEF [FED. R. BANK. 7001]

## [CHEVRON]

40.    Plaintiff hereby incorporates by reference each and every one of the preceding paragraphs as if the same were fully set forth therein.

41.    Plaintiff alleges that at the time the restrictive covenants were recorded, the property was in an unincorporated rural area devoted to agricultural and residential use.

42.    Enforcement of the restrictions against plaintiff's parcel would no longer serve to benefit and effectuate the purposes of the restrictions with respect to the other parcels in the area, nor would it be of any substantial benefit to the remaining properties in the area.

43.    Continued enforcement of the restrictions described above against plaintiff's parcel is unjust, oppressive, and inequitable, in that such enforcement will not materially benefit any of defendants yet will greatly diminish the value of plaintiff's property and furthermore cause irreparable injury to plaintiff, in that plaintiff's property is rendered valueless and plaintiff is ready, able, and willing to improve his/her parcel for the purpose of building a residential home and, if prevented from doing so, will be deprived of a unique investment opportunity.

44.    Pursuant to Cal. Gov. Code § 12955(l) that the restrictive covenants related to the Chumash ancestral group of people, origin and religious and cultural purpose are void and against public policy.

45.    Chevron had known and reasonable knowledge that the use covenants were being breached on or about June of 2005, since Chevron's plant is within such close proximity of the subject property that their failure to file a power of termination within five years from the breach is time barred. And that Chevron's potential claim for its reversionary interest is thus time barred.

46.     An actual controversy has arisen and now exists between plaintiff and defendants in that plaintiff contends that the restrictions described above are no longer binding or enforceable in equity, whereas defendants dispute these contentions and contend that the restrictions are valid and enforceable.

## SECOND CLAIM FOR RELIEF

## DECLARATORY RELIEF [FED. R. BANK. 7001]

## [COASTAL BAND OF CHUMASH NATION, INC. and

## SOUTHERN CHUMASH OWL CLAN]

45.     Plaintiff hereby incorporates by reference each and every one of the preceding paragraphs as if the same were fully set forth therein.

46.     Plaintiff alleges that both the Coastal Band of Chumash Nation and Southern Chumash Owl Clan are not Federally recognized Native American Indian Tribes.

47.     Plaintiff desires a judicial determination based upon the published Federal Register attached as Exhibit D that Coastal and Southern are not recognized such that Bureau of Indian Affair involvement is not necessary.

## THIRD CLAIM FOR RELIEF

## QUIET TITLE

## [ALL DEFENDANTS]

47.     Plaintiff incorporates herein by reference the allegations made in preceding paragraphs as though fully set forth herein.

48.     Plaintiff is, and at all times herein mentioned was, the owner in fee simple and in possession and control of that real property situated in Santa Barbara County, known as assessor's parcel number 081-140-023 in the city of Goleta, California, and more particularly described as follows:

The legal description of said property is:

That portion of the Rancho Nuestra Senora Del Refugio in the County of Santa Barbara, State of California, according to the United States patent thereof recorded July 28, 1866, in Book "A" of Patents, Page 17, et seq., records of said County, described as follows:

Beginning at the Westerly terminus of that certain course in the Northerly line of the land described in the deed to Robert L. Waldron, et al., recorded June 22, 1970, as Instrument Number 16018, in Book 2312, Page 274 of Official Records of said County, having a bearing and distance of "South 82º 22' 10" East, 323.88 feet";

Thence 1st, S. 82º 22' 10" E., along said Northerly line, 323.88 feet to an angle point therein;

Thence 2nd, N. 42º 21' 00" E., continuing along said Northerly line, 145.00 feet to an angle point therein;

Thence 3rd, N. 88º 45' 00" E., continuing along said Northerly line, 70.00 feet to an angle point therein;

Thence 4th, S. 55º 58' 37" E., continuing along said Northerly line, 251.10 feet to an angle point therein;

Thence 5th, N. 84º 43' 18" E., continuing along said Northerly line, 355.88 feet to an angle point therein;

Thence 6th, N. 67º 49' 32" E., continuing along said Northerly line, 182.00 feet to angle point therein;

Thence 7th, N. 58º 05' 58" E., continuing along said Northerly line, 313.85 feet to an angle point therein;

Thence 8th, S. 88º 33' 58" E., continuing along said Northerly line, 320.35 feet to an angle point therein;

Thence 9th, S. 67º 10' 28" E., continuing along said Northerly line, 257.39 feet to an angle point therein;

Thence 10th, S. 33º 31' 32" E., continuing along said Northerly line, 337.08 feet to an angle point therein;

Thence 11th, S. 6º 20' 40" W, continuing along said Northerly line, 151.33 feet to an angle point therein;

Thence 12th, S. 69º 12' 50" E., continuing along said Northerly line, 453.10 feet to an angle point therein;

Thence 13th, leaving said Northerly line, S. 74º 05' 19" E., a distance of 1016.41 feet to a 1/2-inch iron pipe with tag marked "PLS 6167";

Thence 14th, S. 20º 22' 06" E., a distance of 265.90 feet a 1/2-inch iron pipe with tag marked "PLS 6167";

Thence 15th, S. 22º 37' 56" E., a distance of 137.48 feet to a 1/2-inch iron pipe with tag marked "PSL 6167";

Thence 16th, S. 4º 25' 19" E., a distance of 17.77 feet to a 1/2-inch iron pipe with tag marked "PLS 6167";

Thence 17th, S. 22º 15' 50" W., a distance of 15.83 feet to a 1/2-inch iron pipe with tag marked "PLS 6167";

Thence 18th, S. 37º 13' 11" W., a distance of 12.43 feet to a 1/2-inch iron pipe with tag marked "PLS 6167";

Thence 19th, S. 47º 40' 28" W., a distance of 14.42 feet to a 1/2-inch iron pipe with tag marked "PLS 6167";

Thence 20th, S. 58º 38' 26" W., a distance of 27.23 feet to a 1/2-inch iron pipe with tag marked "PLS 6167";

Thence 21st, S. 76º 54' 49" W., a distance of 170.73 feet to a 1/2-inch iron pipe with tag marked "PLS 6167";

Thence 22nd, N. 78º 16' 07" W., a distance of 1441.00 feet to a 1/2-inch iron pipe with tag marked "PLS 6167";

Thence 23rd, S. 25º 58' 01" W., a distance of 449.87 feet to a 1/2-iron pipe with tag marked "PLS 6167";

Thence 24th, N. 79º 59' 39" W., a distance of 505.37 feet ot a 1/2-inch iron pipe with tag marked "PLS 616";

Thence 25th, N. 89º 15' 07" W., a distance of 793.83 feet to a 1/2-inch iron pipe with tag marked "PLS 6167";

Thence 26th, N. 25º 49' 22" W., a distance of 1468.16 feet to the point of beginning.

49.    The basis of plaintiff's title a deed from Southern Chumash Owl Clan granting the above-described property in fee simple to plaintiff dated October 29, 2013, and recorded in the Official Records of the County of Santa Barbara, California, as Instrument Number 2013-0069951.

50.    Plaintiff's interest in the Property is superior to that of all Defendants.

51.     Plaintiff is seeking to quiet title against the claims of defendant(s) as follows: defendant(s) Chevron USA, Inc.; Coastal Band of the Chumash Nation, Inc.; and Southern Chumash Owl Clan, who claim or may claim some right, title, estate, lien, or interest in and to the lands of plaintiff as described in this complaint, based on the purported deed described in Paragraphs 12 and 13 of this complaint; the claims of all unknown defendants described in Paragraph 4, whether or not the claim or cloud is known to plaintiff; and the unknown, uncertain, or contingent claim, if any, of Defendant's claim(s) are without any rights whatsoever and that those defendant(s) have no right, title, estate, lien, or interest whatever in the above-described property, or any part of that property, except the following exceptions identified in the a title report attached as Exhibit F, starting at page 3, paragraphs 7 through 23.

52.     Defendants claim or may claim an interest adverse to Plaintiff's interest in the Subject Property, in the form of a reversionary interest.

53.     Defendants claim or may claim all oil, gas, water, hydrocarbon, and mineral rights in the Plaintiff's property and Plaintiff seeks to quiet title of those claims of said defendants described in instrument numbers 99-021851 and 99-021853 and void those deeds.

54.     Plaintiff desires and is entitled to and prays for a judicial declaration quieting title in Plaintiff's name and for a determination of their title against adverse claims of Defendants and Unknown Parties that may claim against Plaintiff.

55.     Plaintiff is therefore seeking to quiet title as of October 29, 2013 to any and all claims of all defendants free and clear of any and all claim and interest whatever they may be.

///

///

///

///

///

**WHEREFORE,** Plaintiff prays judgment against the Defendants, and each of them, as follows:

On the First Claim for Relief:

1.    For a declaration that the restrictive covenants and restrictive use covenants in the Deeds as instrument numbers 99-021850; 99-021851 are void, burdensome, and of no benefit to the plaintiff's property and violate Cal. Gov. Code § 12955(l);

2.    For a declaration that Chevron failed to commence an action within 5 years pursuant to Cal. Code Civ. Proc. § 336(b) for a violation under section 784 of the Cal. Civ. Code;

3.    For a declaration that their shall be no restrictions against plaintiff's property;

4.    For such other and further relief as this Court may deem just and proper.

On the Second Claim for Relief:

5.    For a declaration that both Coastal Band of the Chumash Nation and Southern Chumash Owl clan are not currently recognized Native American Tribes published in the Federal Register.

6.    For such other and further relief as this Court may deem just and proper.

On the Third Claim for Relief:

7.    For a judgment that plaintiff is the owner in fee simple of the property and that defendants do not have any right, title, claims or reversionary interest in the property adverse to plaintiff and that plaintiff is the owner in fee simple free from any and all claims or interest in the property whether known or unknown;

8.    For a judgment that paragraphs 1 and 2 in the deed as instrument number 99-021850 be canceled and removed as an encumbrance and cloud on the plaintiff's title as it relates to any language related to any reversionary interest and use restrictions for commercial, industrial, or residential purposes;

9.    For a judgment that the deed as instrument number 99-021851 be canceled and removed as an encumbrance and cloud on the plaintiff's title;

10.    For a judgment that the water use agreement as instrument number 99-021853 be canceled and removed as an encumbrance and cloud on the plaintiff's title;

11.    For such other and further relief as this Court may deem just and proper.

On all CLAIMS:

12.    All parties to bear their own fees and costs;

13.    Plaintiff does not seek monetary damages;

14.    For such other and further relief as this Court may deem just and proper.

Dated: August 26, 2014

/s/ Steven L. Yarmy
Steven L. Yarmy, Esq.
Nevada Bar No. 8733
2595 S. Torrey Pines Drive
Las Vegas, Nevada 89146
(702) 967-0442
(702) 586-3690 FAX
sly@stevenyarmylaw.com
*Attorney for Plaintiff/Debtor*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**<u>EXHIBIT A</u>**

**94-037784**

| Rec Fee | 32.00 |
| Check | 32.00 |

Recorded
Official Records
County of
Santa Barbara
Kenneth A Pettit
Recorder
11:01am  3-May-94        PUBL    BB   10

Recording requested by and when
recorded mail to:
Douglas B. Large, Esq
Archbald & Spray
505 Bath Street
Santa Barbara, CA 93101

## AGREEMENT FOR AND
## DECLARATION OF PROTECTIVE COVENANT

THIS AGREEMENT is made by and between CHEVRON U.S.A. PRODUCTION COMPANY, a division of CHEVRON U.S.A. INC., a Pennsylvania corporation, (hereafter "Chevron"), the Coastal Band of the Chumash Nation, Inc., a California nonprofit corporation, (hereafter "CBCN") and Mr. Paul Brinkman (hereafter "Brinkman").

### RECITALS:

1.      Chevron was the owner of that certain entire parcel of real property located in Santa Barbara County, California, described as assessor's parcel #81-140-15 and commonly referred to as the "Smith Parcels."

2.      On or around July 27, 1987, Chevron executed and delivered to CBCN a corporation grant deed conveying to CBCN a portion of the Smith Parcels, for so long as that real property is used for religious or cultural purposes.  The portion conveyed included a registered archeological site, known as SBa 1954, the southernmost portion of which archeological site (hereafter "Protected Land") is the subject of this agreement for a protective covenant.  That deed (hereafter the "1987 deed") was given to the CBCN, but was lost and never recorded.

3.      On or about October 30, 1987, Chevron and Brinkman entered into a memorandum of agreement concerning a lot line adjustment (hereafter "Brinkman MOA") whereby, among other things, subject to ratification by the CBCN, Brinkman would be deeded a portion of the Smith Parcels, which portion included SBa 1954, and Chevron would be deeded an equal amount of land behind its plant and north of the Sunburst property for a water tank site and an air monitoring station.  Brinkman is the owner of assessor's parcel numbers 81-140-20 and 81-130-51.

4.      On December 1, 1987, CBCN and Chevron entered into a memorandum of agreement concerning a lot line adjustment (hereafter the "CBCN MOA") whereby the CBCN affirmed, ratified and approved a lot line adjustment affecting a portion of the Smith Parcels, which portion included SBa 1954, subject to Chevron amending the Brinkman MOA to include a covenant running with the land to preserve SBa 1954.

5.      On December 3, 1987, Chevron and Brinkman entered into an amendment to the Brinkman MOA acknowledging and affirming the importance of and need for respect for

SBa 1954 as a religious and ceremonial site for the CBCN. Brinkman, as proposed grantee/covenantor of the real property containing SBa 1954, acknowledged and understood that a covenant running with the land was binding on him, his successors, heirs, legatees, devises, administrators and executors. Further, Brinkman, as future title owner, agreed to an affirmative duty to preserve and not to disturb SBa 1954 in any manner other than to cap the existing access road to his residence which crosses SBa 1954.

6.      On September 12, 1992, CBCN and Chevron entered into an amendment to the CBCN MOA (hereafter the "CBCN AMOA"). One provision of the CBCN AMOA provided that Chevron agree to execute and record a Declaration of Protective Covenant to preserve SBa 1954.

7.      On November 3, 1992, Chevron and Brinkman entered into another amendment to the Brinkman MOA (hereafter the "Brinkman AMOA"). One provision of the Brinkman AMOA gave Brinkman additional land from the Smith Parcels. Another provision provided that a protective covenant would be placed on the prior portion of the Smith Parcels to be deeded to Mr. Brinkman to preserve SBa 1954.

8.      The intended lot line adjustment referenced above was never consummated due to disagreement among the parties. This disagreement resulted in the commencement of litigation on December 23, 1992, by CBCN against Chevron and Brinkman, entitled *Coastal Band of the Chumash Nation, Inc. v. Chevron U.S.A., Inc., et al.*, Santa Barbara Superior Court No. 195192. The parties have now resolved that litigation and their differences in an agreement entitled Compromise Settlement Agreement and Mutual Release of All Claims, which fully and finally resolves, concludes and settles all matters between them concerning or in any way related to the above recitals (and all agreements referenced therein) and the subject matter of the complaint in the referenced litigation, and includes agreement about this protective covenant.

9.      It is the desire and intention of Chevron, CBCN and Brinkman, as past, present and future owners of the real property upon which the Protected Land is situated, to subject the Protected Land, located on the southeastern edge of the Smith Parcels' southernmost portion, to certain conditions, covenants and restrictions upon and subject to which all of said Protected Land shall be held, maintained and conveyed.

NOW THEREFORE, in consideration of the mutual promises of the parties hereto, and other valuable consideration acknowledged by all parties to be adequate, each to the others as covenantors and covenantees, and expressly for the benefit of and to bind their successors-in-interest, the said parties agree as follows:

## I. PURPOSE AND APPLICATION

1.      The purpose of these restrictions is to ensure that cultural resources located on the Protected Land are preserved in perpetuity, to prevent the erection of structures on the Protected Land and to provide and maintain in a manner harmonious with the Protected

2

Land certain existing utility lines, gas or water lines, fences and roads.

     2.    The Protected Land shall be held, conveyed, rented, leased, encumbered, used and occupied subject to the conditions, covenants, restrictions and limitations hereinafter set forth, which shall bind all parties having or acquiring any right, title or interest in the Protected Land or any part thereof, and shall apply to and bind the heirs, assignees and successors in right, title or interest thereof.

## II. DEFINITIONS

     1.    "Protected Land," which is subject to the protective covenants described herein, shall mean and include the southernmost portion of SBa 1954 adjacent to and south of the Brinkman access road, located on the southeastern edge of the Smith Parcels described in Exhibit "A" (attached hereto) and north of the adjoining property owned and maintained by the State of California for Highway 101.

     2.    "Smith Parcels" shall mean and include assessor's parcel #81-140-15, Santa Barbara County, as shown on Exhibit "B" attached hereto, a portion of which includes the Protected Land.

     3.    "Improvements" shall mean and include but not be limited to roads, power lines, buried cables, fences, gas or water lines, pipelines or other developments as defined in the Coastal Act, except for the repair or maintenance of those improvements that may be required by any local, State or federal agency.

     4.    "Cultural resources" shall mean and include all burials, burial artifacts or other artifacts associated with the Chumash Indian culture, Chumash Indian being a Native American tribe of the central coast of California.

## III. CAPPING, REGULATION OF IMPROVEMENTS AND MAINTENANCE

     1.    The Protected Land will be "capped" or covered by Chevron, a licensed contractor, or other entity acceptable to CBCN at Chevron's cost with a one-foot layer of topsoil or other material suitable to sustain vegetation for the purpose of protecting cultural resources at this site. Chevron shall not be responsible for providing such vegetation or the cost thereof. The capping will be done in a manner to mitigate unreasonable impacts on the Protected Land. CBCN will be allowed to monitor the capping, but at no cost to Chevron.

     2.    All repairs or maintenance to any improvements on the Protected Land shall be in compliance with all applicable local, state and federal regulations and shall be subject to the restrictions contained in this covenant. No excavation, or other activities that may cause earth disturbance, or the removal or dislocation of cultural artifacts, shall occur on the Protected Land except in connection with the repair or maintenance of improvements now on the Protected Land or as may be required by a local, state or federal agency. Grazing of cattle or activities of similar impact on the Protected Land shall not be considered "earth

3

disturbance."

3.      In the event that any such allowed activities may foreseeably cause substantial earth disturbance or the removal or dislocation of cultural artifacts, reasonable efforts shall be made to avoid and mitigate these impacts. The CBCN shall be consulted regarding said mitigation measures, and a CBCN representative shall monitor the activity and mitigation effort at CBCN's sole cost.

## IV. ENFORCEMENT

### A.    Notice of Objection and Suit.

1.      Violation or breach of any restriction herein contained shall give to CBCN only the right to post a written notice of objection at the main entrance gate to Brinkman's property or to enter upon the Protected Land at reasonable times, or when objectionable activities are occurring, to serve such a notice of objection. The agreed effect of such notice will be to suspend and stay the objectionable activities on the Protected Land forthwith pending the immediate prosecution of and ruling from a proceeding at law or in equity against the owner, lessee or other person or persons who may have violated or are attempting to violate any of these restrictions on use of the Protected Land, to enjoin or prevent them from doing so, to cause said violation to be remedied, or to recover damages for the violation, if such violation is established pursuant to law. Chevron will have no contractual or legal right, obligation or responsibility to enforce this Agreement or covenant and will not be subject to suit or liability for any potential dispute concerning, or breach or violation of, this Agreement or covenant by others.

2.      The result of every action or omission whereby any restriction on use of the Protected Land herein contained is violated in whole or in part is hereby declared and agreed to be and to constitute a nuisance, and every remedy allowed by law or equity against an owner, lessee, tenant or other user of the Protected Land, either public or private, shall be applicable against every such result and may be sought and enforced by CBCN.

3.      In any legal or equitable action for the enforcement of, or to restrain the violation of, this covenant or any provisions hereof, the losing party shall pay the reasonable attorneys' fees of the prevailing party, in such amount as may be fixed by the court in such proceedings. All remedies provided herein or at law or in equity shall be cumulative and not exclusive.

### B.    Failure to enforce not a waiver of rights.

1.      The failure of CBCN to enforce any restriction herein contained shall not be deemed to be a waiver of the right to do so thereafter nor the right to enforce any other restriction.

4

## V. OTHER

### A.    Constructive Notice and Acceptance

1.    Every person who now or hereafter owns or acquires any right, title, estate or interest in or to any portion of said Protected Land is and shall be conclusively deemed to have consented and agreed to every covenant, condition and restriction contained herein, whether or not any reference to this Agreement or covenant is contained in an instrument by which such person acquired an interest in the Protected Land.

### B.    Paragraph Headings

1.    Paragraph headings are inserted for convenience only and are not intended to be part of this covenant or in any way to define, limit or describe the scope of or intent of the particular paragraph to which such headings refer.

### C.    Effect of Invalidation

1.    If any provision of this Agreement or covenant is held to be invalid by any court of proper jurisdiction, the invalidity of such provision shall not affect the validity of the remaining provisions hereof.

IN WITNESS WHEREOF, the undersigned have executed this Agreement and covenant on the _24th_ day of _February_ , 1994.

CHEVRON U.S.A. PRODUCTION COMPANY,
a division of Chevron U.S.A. Inc.

By:_____
    A. Cornelius
    Assistant Secretary

COASTAL BAND OF THE CHUMASH NATION, INC.

By: _____
    Antoinette Garnica, Chairperson,
    Board of Directors

PAUL BRINKMAN

5

## V. OTHER

**A.  Constructive Notice and Acceptance**

1.   Every person who now or hereafter owns or acquires any right, title, estate or interest in or to any portion of said Protected Land is and shall be conclusively deemed to have consented and agreed to every covenant, condition and restriction contained herein, whether or not any reference to this Agreement or covenant is contained in an instrument by which such person acquired an interest in the Protected Land.

**B.  Paragraph Headings**

1.   Paragraph headings are inserted for convenience only and are not intended to be part of this covenant or in any way to define, limit or describe the scope of or intent of the particular paragraph to which such headings refer.

**C.  Effect of Invalidation**

1.   If any provision of this Agreement or covenant is held to be invalid by any court of proper jurisdiction, the invalidity of such provision shall not affect the validity of the remaining provisions hereof.

IN WITNESS WHEREOF, the undersigned have executed this Agreement and covenant on the _____ day of _____, 1994.

**CHEVRON U.S.A. PRODUCTION COMPANY,**
a division of Chevron U.S.A. Inc.

By: _____
    A. Cornelius
    Assistant Secretary

**COASTAL BAND OF THE CHUMASH NATION, INC.**

By: _____
    Antoinette Garnica, Chairperson,
    Board of Directors

_____
**PAUL BRINKMAN**

5

## ACKNOWLEDGMENTS

STATE OF CALIFORNIA

COUNTY OF *Ventura*                ss.

On this *25th* day of *February*_____, 1994, before me, the undersigned, a Notary Public in and for said county and state, personally appeared A. CORNELIUS, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person whose name is subscribed to the within AGREEMENT FOR AND DECLARATION OF PROTECTIVE COVENANT and acknowledged to me that he executed the same in his authorized capacity, and that by his signature on the instrument, the person, or the entity upon behalf of which the person acted, executed the instrument.

WITNESS my hand and seal.

*Shirley Thompson*
NOTARY PUBLIC

SHIRLEY THOMPSON
COMM. # 982777
Notary Public — California
VENTURA COUNTY
My Comm. Expires JAN 18, 1997

STATE OF CALIFORNIA

COUNTY OF SANTA BARBARA                ss.

On this _____ day of _____, 1994, before me, the undersigned, a Notary Public in and for said county and state, personally appeared ANTOINETTE GARNICA, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person whose name is subscribed to the within AGREEMENT FOR AND DECLARATION OF PROTECTIVE COVENANT and acknowledged to me that he executed the same in his authorized capacity, and that by his signature on the instrument, the person, or the entity upon behalf of which the person acted, executed the instrument.

WITNESS my hand and seal.

_____
NOTARY PUBLIC

STATE OF CALIFORNIA

COUNTY OF SANTA BARBARA                ss.

On this _____ day of _____, 1994, before me, the undersigned, a Notary Public in and for said county and state, personally appeared PAUL BRINKMAN, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person whose name is subscribed to the within COMPROMISE AGREEMENT FOR AND DECLARATION OF PROTECTIVE COVENANT and acknowledged to me that he executed the same in his authorized capacity, and that by his signature on the instrument, the person, or the entity upon behalf of which the person acted, executed the instrument.

WITNESS my hand and seal.

_____
NOTARY PUBLIC

f:\wpim\cor\chevchu\procov.dr6
February 24, 1994  11:02 am

6

**ACKNOWLEDGMENTS**

STATE OF CALIFORNIA

ss.

COUNTY OF _____

On this _____ day of _____, 1994, before me, the undersigned, a Notary Public in and for said county and state, personally appeared A. CORNELIUS, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person whose name is subscribed to the within AGREEMENT FOR AND DECLARATION OF PROTECTIVE COVENANT and acknowledged to me that he executed the same in his authorized capacity, and that by his signature on the instrument, the person, or the entity upon behalf of which the person acted, executed the instrument.

WITNESS my hand and seal.

_____
NOTARY PUBLIC

STATE OF CALIFORNIA

ss.

COUNTY OF SANTA BARBARA

On this _24th_ day of _February_____, 1994, before me, the undersigned, a Notary Public in and for said county and state, personally appeared ANTOINETTE GARNICA, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person whose name is subscribed to the within AGREEMENT FOR AND DECLARATION OF PROTECTIVE COVENANT and acknowledged to me that he executed the same in his authorized capacity, and that by his signature on the instrument, the person, or the entity upon behalf of which the person acted, executed the instrument.

WITNESS my hand and seal.

_____
NOTARY PUBLIC

STATE OF CALIFORNIA

ss.

COUNTY OF SANTA BARBARA

On this _25th_ day of _February_____, 1994, before me, the undersigned, a Notary Public in and for said county and state, personally appeared PAUL BRINKMAN, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person whose name is subscribed to the within COMPROMISE AGREEMENT FOR AND DECLARATION OF PROTECTIVE COVENANT and acknowledged to me that he executed the same in his authorized capacity, and that by his signature on the instrument, the person, or the entity upon behalf of which the person acted, executed the instrument.

WITNESS my hand and seal.

_____
NOTARY PUBLIC

f:\wpfiles\kor\chevchu\procov.dr4
February 24, 1994  11:28 am

6

## EXHIBIT "A"
### ARCHAEOLOGICAL SITE TO BE CAPPED

That portion of PARCEL TWO as described in the deed to Chevron USA Inc, recorded April 23, 1985, as Instrument Number 85-020437 of Official Records, filed in the Office of the County Recorder of the County of Santa Barbara, State of California, more particularly described as follows:

Commencing at the southeast corner of said PARCEL TWO;

Thence, S 77°39'53" W, along the southerly line of said PARCEL TWO, a distance of 314.24 feet, to the TRUE POINT OF BEGINNING;

Thence 1st, N 12°47'59" W, leaving said southerly line, a distance of 56.55 feet;

Thence 2nd, N 76°54'49" E, a distance of 14.89 feet;

Thence 3rd, N 58°38'26" E, a distance of 31.09 feet;

Thence 4th, N 47°40'28" E, a distance of 17.23 feet;

Thence 5th, N 37°13'11" E, a distance of 15.77 feet;

Thence 6th, N 22°15'50" E, a distance of 17.80 feet;

Thence 7th, S 73°26'54" E, a distance of 45.78 feet;

Thence 8th, S 28°04'58" E, a distance of 62.77 feet;

Thence 9th, S 15°52'28" E, a distance of 17.88 feet to a point on said southerly line of PARCEL TWO;

Thence 10th, S 77°39'53" W, along said southerly line, a distance of 139.07 feet, to the TRUE POINT OF BEGINNING.

Containing 10025.63 square feet, more or less.



W.O. 10616.01
December 15, 1993
JPH:jph

EXHIBIT A

Penfield & Smith

EXHIBIT MAP
ARCHAEOLOGICAL SITE
TO BE CAPPED
DECEMBER, 1993

POINT OF COMMENCEMENT

TRUE POINT OF BEGINNING

PROPOSED LOT LINE

EXISTING LOT LINE

PARCEL TWO
85-020437 O.R.

PARCEL ONE
85-020437 O.R.

U. S. HIGHWAY 101

-N-

NOT TO SCALE

Penfield&Smith
ENGINEERS  •  SURVEYORS
10616.01                    10616.2.DWG

EXHIBIT B

1

**<u>EXHIBIT B</u>**

2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

RECORDING REQUESTED BY:

    Penfield and Smith, Engineers • Surveyor

WHEN RECORDED MAIL THIS DEED AND TAX
STATEMENTS TO:

    Coastal band of the Chumash Nation, Inc.
    c/o Herb Fox
    Kirker and Fox, LLP
    3 West Carrillo Street, Suite 203
    Santa Barbara, CA 93101

```
99-021850        : Rec Fee      26.00
   Recorded      : AU2           2.00
Official Records : PCD          20.00
Co Santa Barbara : COP           4.50
Kenneth A Pettit : Check        52.50
   Recorder      :
Larry Herrera    :
  Assistant      :
2:00pm 18-Mar-99 :    PUBL    BB   8
```

APN 81-140-15

# CORPORATION GRANT DEED

THE UNDERSIGNED GRANTOR DECLARES
    DOCUMENT TRANSFER TAX IS $ ~ 0~ Lot Line Adjustment only.
      X computed on full value of property conveyed, or
        computed on full value less value of liens or encumbrances remaining at time of sale,
      Unincorporated area of the County of Santa Barbara

FOR A VALUABLE CONSIDERATION, receipt of which is hereby acknowledged,

    CHEVRON U.S.A. INC., a corporation organized under the laws of the State of
Pennsylvania, hereinafter called "Grantor", hereby grants to the Coastal Band of the Chumash
Nation, a California non-profit Corporation hereinafter called "Grantee", that certain real property
in the unincorporated area of the County of Santa Barbara, State of California as more fully
described in Exhibit "A", attached hereto and made a part hereof, FOR SO LONG AS SAID REAL
PROPERTY IS USED FOR RELIGIOUS OR CULTURAL PURPOSES.

    Grantee accepts said described property upon the express condition that it will use such
property for religious or cultural purposes only. Said described real property shall revert back to
Grantor if Grantee uses said real property for any industrial, commercial or residential purposes. It
is Grantor's express and sole intent that said described real property be used only for religious or
cultural purposes as directed by Grantee for use by those persons of Chumash descent, Chumash
being a recognized American Indian tribe of the central coast area of California, whether or not
such persons of Chumash descent are affiliated with or members of The Coastal Band of the
Chumash Nation.

This conveyance is subject to all other matters appearing of record including, but not limited to, a mineral reservation by prior grantors, that can be ascertained by an inspection of said real property and is made without any warranty, expressed or implied, as to the suitability of said real property for any purpose.

This deed arises from Lot Line Adjustment 94-LA-010 and is    intended to create single legal parcels within the meaning of Civil Code 1093.

CHEVRON U.S.A. Inc., a Pennsylvania Corporation

By: _____    Date: _9-14-98_

1061\LLA\LLA-CERT\CHEV-CHU.DOC
(1061\LLA\NEWLOT\CHEV-CHU.DOC)

STATE OF CALIFORNIA          )ss
COUNTY OF _Santa Barbara_

On this the _14_ day of _Sept._, 199_8_, before me, the undersigned, a Notary Public in and for said County and State, personally appeared _Lee Batalor_

personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument, and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument, the person(s) or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

Signature: _____

SANDRA M. SEEKINS
Comm. # 1174370
NOTARY PUBLIC CALIFORNIA
Santa Barbara County
My Comm. Expires Feb 22, 2002

EXHIBIT "A"

LOT LINE ADJUSTMENT LEGAL DESCRIPTION

CHUMASH PARCEL

That portion of the Rancho Nuestra Senora Del Refugio in the County of Santa Barbara, State of California, according to the United States patent thereof recorded July 28, 1866, in Book "A" of Patents, Page 17, et seq., records of said County, described as follows:

Beginning at the westerly terminus of that certain course in the northerly line of the land described in the deed to Robert L. Waldron, et. al., recorded June 22, 1970, as Instrument Number 16018, in Book 2312, Page 274 of Official Records of said County, having a bearing and distance of "South 82°22'10" East, 323.88 feet";

Thence 1st, S. 82°22'10" E., along said northerly line, 323.88 feet to an angle point therein;

Thence 2nd, N. 42°21'00" E., continuing along said northerly line, 145.00 feet to an angle point therein;

Thence 3rd, N. 88°45'00" E., continuing along said northerly line, 70.00 feet to an angle point therein;

Thence 4th, S. 55°58'37" E., continuing along said northerly line, 251.10 feet to an angle point therein;

Thence 5th, S. 84°43'18" E., continuing along said northerly line, 355.88 feet to an angle point therein;

Thence 6th, N. 67°49'32" E., continuing along said northerly line, 182.00 feet to an angle point therein;

Thence 7th, N. 58°05'58" E., continuing along said northerly line, 313.85 feet to an angle point therein;

Thence 8th, S. 88°33'58" E., continuing along said northerly line, 320.35 feet to an angle point therein;

Thence 9th, S. 67°10'28" E., continuing along said northerly line, 257.39 feet to an angle point therein;

PROFESSIONAL LAND SURVEYOR
JUSTIN P. HEIGHT
NO. 6167
EXPIRES 3·31·98
STATE OF CALIFORNIA

Page 1 of 5

W.O. 10616.02
April 17, 1997
JPH:jjn

Penfield & Smith

Thence 10th, S. 33°31'32" E., continuing along said northerly line, 337.08 feet to an angle point therein;

Thence 11th, S. 6°20'40" E., continuing along said northerly line, 151.33 feet to an angle point therein;

Thence 12th, S. 69°12'50" E., continuing along said northerly line, 453.10 feet to an angle point therein;

Thence 13th, leaving said northerly line, S. 74°05'19" E., a distance of 1016.41 feet to a ½-inch iron pipe with tag marked "PLS 6167";

Thence 14th, S. 20°22'06" E., a distance of 265.90 feet to a ½-inch iron pipe with tag marked "PLS 6167";

Thence 15th, S. 22°37'56" E., a distance of 137.48 feet to a ½-inch iron pipe with tag marked "PLS 6167";

Thence 16th, S. 4°25'19" E., a distance of 17.77 feet to a ½-inch iron pipe with tag marked "PLS 6167";

Thence 17th, S. 22°15'50" W., a distance of 15.83 feet to a ½-inch iron pipe with tag marked "PLS 6167";

Thence 18th, S. 37°13'11" W., a distance of 12.43 feet to a ½-inch iron pipe with tag marked "PLS 6167";

Thence 19th, S. 47°40'28" W., a distance of 14.42 feet to a ½-inch iron pipe with tag marked "PLS 6167";

Thence 20th, S. 58°38'26" W., a distance of 27.23 feet to a ½-inch iron pipe with tag marked "PLS 6167";

Thence 21st, S. 76°54'49" W., a distance of 170.73 feet to a ½-inch iron pipe with tag marked "PLS 6167";

Thence 22nd, N. 78°16'07" W., a distance of 1441.00 feet to a ½-inch iron pipe with tag marked "PLS 6167";

W.O. 10616.02
April 17, 1997
JPH:jjn

Penfield & Smith

Thence 23rd, S. 25°58'01" W., a distance of 449.87 feet to a ½-inch iron pipe with tag marked "PLS 6167";

Thence 24th, N. 79°59'39" W., a distance of 505.37 feet to a ½-inch iron pipe with tag marked "PLS 6167";

Thence 25th, N. 89°15'07" W., a distance of 793.83 feet to a ½-inch iron pipe with tag marked "PLS 6167";

Thence 26th, N. 25°49'22" W., a distance of 1468.16 feet to the point of beginning.

SURV\LEGAL\10616\TOTAL\CHUMASH.DOC

W.O. 10616.02
April 17, 1997
JPH:jjn

Page 3 of 5





EXHIBIT A
LOT LINE ADJUSTMENT
VICINITY MAP
APRIL 1997

page 4 of 5 pages

Penfield & Smith
ENGINEERS · SURVEYORS
10615.02        LLADX\LDWG   1" = 2400'



EXHIBIT A
LOT LINE ADJUSTMENT
DETAIL MAP
APRIL 1997

page 5 of 5 pages

1" = 600'

**EXHIBIT C**

RECORDING REQUESTED BY

CHICAGO TITLE

AND WHEN RECORDED MAIL THIS DEED AND, UNLESS OTHERWISE
SHOWN BELOW, MAIL TAX STATEMENT TO:

Name Keith Howell
Street Chevron U.S.A. Production Co.
Address 646 County Square Drive
City & Ventura, CA  93003
State
Zip

Title Order No. _____ Escrow No. _____

| 99-021851 | Rec Fee | 29.00 |
| Recorded | AU2 | 2.00 |
| Official Records | PCO | 20.00 |
| Co Santa Barbara | NCO | 27.00 |
| Kenneth A Pettit | COP | 5.00 |
| Recorder | Check | 83.00 |
| Larry Herrera | | |
| Assistant | | |
| 2:00pm 18-Mar-99 | PUBL | BB    9 |

SPACE ABOVE THIS LINE FOR RECORDER'S USE

T 360 LEGAL (1-94)

# Quitclaim Deed

81-140-14

THE UNDERSIGNED GRANTOR(s) DECLARE(s)
DOCUMENTARY TRANSFER TAX IS $ 0   but have adjust
☑ ___ unincorporated area ☐ City of _____
Parcel No. _____
☑ computed on full value of property conveyed, or
☐ computed on full value less value of liens or encumbrances remaining at time of sale, and

FOR A VALUABLE CONSIDERATION, receipt of which is hereby acknowledged,
The COASTAL BAND OF THE CHUMASH NATION, INC., A California Non-Profit
Corporation
hereby REMISE, RELEASE AND FOREVER QUITCLAIM to
CHEVRON, U.S.A., Inc. a Corporation

the following described real property in the UNINCORPORATED AREA OF THE
county of SANTA BARBARA _____ , state of California;

the real property described in a certain Corporation Grant Deed dated on or about
July 27, 1987.  A true and correct copy of said Corporation Grant Deed is attached
hereto as Exhibit "A".

The Coastal Band of the Chumash Nation,
Inc., a California Non-Profit
Corporation

Dated _Sept 14, 1998_

By: _____

STATE OF CALIFORNIA
COUNTY OF _Santa Barbara_ } S.S.
On _Sept. 14, 1998_ before me,
_Ann Verhulst_
a Notary Public in and for said County and State; personally appeared
_Al Winkler_
personally known to me (or proved to me on the basis of satisfactory
evidence) to be the person(s) whose name(s) is/are subscribed to the
within instrument and acknowledged to me that he/she/they executed
the same in his/her/their authorized capacity(ies), and that by his/her/their
signature(s) on the instrument the person(s), or the entity upon behalf
of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal

Signature _____

ANN VERHULST
COMM. # 1050703
NOTARY PUBLIC - CALIFORNIA
SANTA BARBARA COUNTY
My Comm. Expires January 29, 1998

(This area for official notarial seal)

MAIL TAX STATEMENTS TO PARTY SHOWN ON FOLLOWING LINE; IF NO PARTY SHOWN, MAIL AS DIRECTED ABOVE

| Name | Street Address | City & State |

WHEN RECORDED MAIL TO:
    As Directed Above

MAIL TAX STATEMENTS TO:
    As Directed Above

### CORPORATION GRANT DEED

CHEVRON U.S.A. INC., a corporation organized under the laws of the State of Pennsylvania, hereinafter called "Grantor", hereby grants to the Coastal Band of the Chumash Nation, a California non-profit Corporation hereinafter called "Grantee", for use by All Individuals of Chumash Descent, that certain real property in the unincorporated area of the County of Santa Barbara, State of California as more fully described in Exhibit "A", attached hereto and made a part hereof, FOR SO LONG AS SAID REAL PROPERTY IS USED FOR RELIGIOUS OR CULTURAL PURPOSES.

Grantee accepts said described property upon the express condition that it will use such property for religious or cultural purposes only. Said described real property shall revert back to Grantor if Grantee uses said real property for any industrial, commercial or residential purposes. It is Grantor's express and sole intent that said described real property be used only for religious or cultural purposes as directed by Grantee for use by all those persons of Chumash descent, Chumash being a recognized American Indian tribe of the central coast area of California, whether or not such persons of Chumash descent are affiliated with or members of The Coastal Band of the Chumash Nation.

EXCEPTING AND RESERVING UNTO GRANTOR, ITS SUCCESSORS AND ASSIGNS: all oil, gas and other hydrocarbons; non-hydrocarbon gasses or gaseous substances; all other minerals of whatsoever nature, without regard to similarity to the above-mentioned substances; and all substances that may be produced therewith from said real property.

ALSO EXCEPTING AND RESERVING UNTO GRANTOR, ITS SUCCESSORS AND ASSIGNS: all geothermal resources, embracing: indigenous steam, hot water and hot brines; steam and other gasses, hot water and hot brines resulting from water, gas or other fluids artificially introduced into subsurface formations; heat or other associated energy found beneath the surface of the earth; and byproducts of any of the foregoing such as minerals (exclusive of oil or hydrocarbon gas that can be separately produced) which are found in solution or association with or derived from any of the foregoing.

ALSO EXCEPTING AND RESERVING UNTO GRANTOR, ITS SUCCESSORS AND ASSIGNS: the sole and exclusive right from time to time to bore or drill and maintain wells and other works into and through said real property and adjoining streets, roads and highways below a depth of five hundred (500') feet from the surface thereof for the purpose of exploring for and producing energy resources; the right to produce, inject, store and remove from and through said bores, wells or works, oil, gas, water, and other substances of whatever nature, including the right to perform below said depth any and all operations deemed by Grantor necessary or convenient for the exercise of such rights.

The rights hereinabove excepted and reserved to Grantor do not include and do not except or reserve to Grantor any right of Grantor to use the surface of said real property or the first five hundred (500') feet below said surface or to conduct any operations thereon or therein excepting and reserving unto the Grantor all pipeline and utility easements necessary to conduct its business operations together with the right to install and maintain such lines. Unless herein specifically excepted and reserved, all rights and interests in the surface of said real property are hereby conveyed to Grantee.

This conveyance is subject to all other matters appearing of record including, but not limited to, a mineral reservation by prior grantors, that can be ascertained by an inspection of said real property and is made without any warranty, expressed or implied, as to the suitability of said real property for any purpose.

IN WITNESS WHEREOF, said corporation has caused this instrument to be executed by its Assistant Secretary thereunto duly authorized.

Dated this ___27th___ day of ___July___, 1987.

CHEVRON U.S.A. INC.

By _____
Assistant Secretary

## CORPORATION GRANT DEED
## LEGAL DESCRIPTION

That portion of Rancho Nuestra Senora del Refugio in the County of Santa Barbara, State of California, as per that map recorded in Book A, Page 17, et seq., of Patents in the office of the county Recorder of said County described as follows:

Commencing at a bronze disc monument for U.S. Coast and Geodetic Survey Station 1062, "Slow"; thence North 88°00'41.5" West 5655.63 feet to a bronze disc monument for U.S. Coast and Geodetic Survey Station 1043, "Onofre-2"; thence North 77°43'11" East 2,631.34 feet to the southwest corner of PARCEL ONE described in the deed to Lenny S. Smith, et ux recorded September 30, 1982 as Document No. 41163 of Official Records of said County, said southwest corner being the TRUE POINT OF BEGINNING; thence, along the lines described in said PARCEL ONE the following 21 courses which are to contain all of said PARCEL ONE:

| | | |
|---|---|---|
| 1st | North 19°16'09" West | 1,683.99 feet; thence |
| 2nd | North 89°37'48" East | 70.00 feet; thence |
| 3rd | South 55°00'49" East | 251.08 feet; thence |
| 4th | North 85°36'06" East | 355.86 feet; thence |
| 5th | North 68°42'20" East | 181.99 feet; thence |
| 6th | North 58°58'46" East | 313.83 feet; thence |
| 7th | South 87°41'10" East | 320.33 feet; thence |
| 8th | South 66°17'40" East | 257.37 feet; thence |
| 9th | South 32°38'44" East | 337.06 feet; thence |
| 10th | South 07°13'28" West | 151.32 feet; thence |
| 11th | South 68°20'02" East | 453.07 feet; thence |
| 12th | North 37°16'30" East | 221.01 feet; thence |
| 13th | South 86°17'04" East | 70.18 feet; thence |
| 14th | South 33°01'51" East | 231.60 feet; thence |
| 15th | South 81°36'27" East | 325.13 feet; thence |
| 16th | North 69°18'25" East | 287.90 feet; thence |
| 17th | North 89°37'48" East | 179.99 feet; thence |
| 18th | South 19°26'41" East | 850.26 feet; thence |
| 19th | South 77°32'45" West | 1,263.95 feet; thence |
| 20th | North 89°13'49" West | 905.38 feet; thence |
| 21st | North 89°46'02" West | 900.51 feet to the |

TRUE POINT OF BEGINNING and containing 91.52 acres.

EXCEPTING AND RESERVING THEREFROM unto Grantor the following seven (7) Parcels:

### Parcel 1

Commencing at said southwest corner of PARCEL ONE in the deed to Smith; thence, along the 21st course described above, South 89°46'02" East 450.00 feet to the TRUE POINT OF BEGINNING; thence

| | | |
|---|---|---|
| 1st | North 01°27'08" East | 370.70 feet; thence |
| 2nd | North 06°08'53" East | 371.99 feet; thence |
| 3rd | South 76°38'25" East | 2,003.01 feet; thence |
| 4th | South 39°46'12" West | 199.08 feet to the 19th course described above; thence, along the 19th, 20th, and 21st courses described above. |
| 5th | South 77°32'45" West | 555.79 feet; thence |
| 6th | North 89°13'49" West | 905.38 feet; thence |
| 7th | North 89°46'02" West | 450.51 feet to the TRUE POINT OF BEGINNING and containing 22.49 acres. |

PLEASE DISREGARD: Legibility of writing, Typing or Printing UNSATISFACTORY in this document when received.

Parcel 2

Commencing at said southwest corner of PARCEL ONE in the deed to Smith; thence North 26°22'17" East 1664.01 feet to the TRUE POINT OF BEGINNING; thence

1st NORTH 100.00 feet; thence
2nd EAST 100.00 feet; thence
3rd SOUTH 100.00 feet; thence
4th WEST 100.00 feet to the TRUE POINT OF BEGINNING and containing 0.23 acres.

Parcel 3

A strip of land, 40.00 feet wide, the centerline of which is described as follows:

Beginning at a point in the south line of Parcel 2 described above from which the southwest corner thereof bears WEST a distance of 77.33 feet; thence

1st South 03°23'59" West 118.69 feet; thence
2nd South 76°58'21" West 156.16 feet; thence
3rd South 32°44'14" West 47.41 feet; thence
4th South 32°45'50" West 142.33 feet; thence
5th South 15°38'22" West 161.59 feet; thence
6th South 17°52'05" West 205.21 feet to a point in the north line Parcel 1 described above from which the northwest corner thereof bears North 76°38'25" West a distance of 30.00 feet.

The sidelines of said strip are to be lengthened or shortened to terminate at said south and north lines.

Parcel 4

Commencing at said southwest corner of PARCEL ONE in the deed to Smith; thence North 72°52'04" East 3,542.19 feet to the TRUE POINT OF BEGINNING; thence

1st NORTH 200.00 feet; thence
2nd EAST 200.00 feet; thence
3rd SOUTH 200.00 feet; thence
4th WEST 200.00 feet to the TRUE POINT OF BEGINNING and BEGINNING and containing 0.92 acres.

Parcel 5

A strip of land, 40.00 feet wide, the centerline of which is described as follows:

Beginning at a point in the south line of Parcel 4 described above from which the southwest corner thereof bears WEST 74.59 feet; thence

| 1st South 31°11'38" | West 112.01 feet; thence |
| 2nd South 0°40'27" | East 120.75 feet; thence |
| 3rd South 19°16'15" | East 134.08 feet; thence |
| 4th South 15°34'43" | West 119.46 feet to a point in the north |

line of Parcel 1 described above from which the northwest corner thereof bears South 76°38'25" East a distance of 30.00 feet.

The sidelines of said strip are to be lengthened or shortened to terminate at said south and north lines.

Parcel 6

A strip of land, 40.00 feet wide, the centerline of which is described as follows:

Beginning at a point in the west line of PARCEL ONE of said deed to Smith from which the southwest corner thereof bears South 19°16'09" East a distance of 291.05 feet; thence

| 1st North 40°45'16" | East 204.15 feet; thence |
| 2nd North 65°01'00" | East 151.90 feet; thence |

RECORDER'S MEMO: Legibility of writing, Typing or Printing UNSATISFACTORY in this document when received.

3rd North 39°17'37"        East 133.88 feet; thence
4th South 88°12'42"        East 176.72 feet; thence
5th South 34°13'41"        East 71.47 feet to a point in the west line
of Parcel 1 described above from which the northwest corner thereof
bears North 6°09'53" East a distance of 207.21 feet.

The sidelines of said strip are to be lengthened or shortened to terminate at said west lines.

## Parcel 7

A strip of land, 40.00 feet wide, the centerline of which is described as follows:

Beginning at a point in the east line of said PARCEL ONE in the deed to Smith from which the southeast corner thereof bears South 19°26'29" East a distance of 465.46 feet; thence

1st South 63°11'55" West 98.60 feet to the beginning of a curve concave southeasterly having a radius of 45.00 feet; thence
2nd Southwesterly along said curve through a central angle of 48°03'47" an arc distance of 38.17 feet; thence
3rd South 14°36'08" West 127.24 feet; thence
4th South 15°09'28" East 154.14 feet to the beginning of a curve concave northwesterly having a radius of 80.00 feet; thence
5th Southwesterly along said curve through a central angle of 92°33'45" an arc distance of 129.24 feet; thence
6th South 77°24'22" West 140.26 feet; thence
7th South 71°29'22" West 133.15 feet; thence
8th South 75°29'23" West 59.47 to a point in the east line of Parcel 1 described above from which the southeast thereof bears South 29°46'12" West 83.25 feet.

The sidelines of said strip are to be lengthened or shortened to terminate at said east lines.

The hereinabove legal description is further shown on the map labeled Attachment 1 "Sketch to Accompany Legal Description" which is attached hereto and made a part hereof.

END OF DESCRIPTION

RECORDER'S MEMO: Legibility of writing, Typing or Printing UNSATISFACTORY in this document when received.

1

# DESCRIPTION

That portion of Rancho Nuestra Senora del Refugio in the County of Santa Barbara, State of California, as per that map recorded in Book A, Page 17, et seql., of Patents in the Office of the County Recorder of said County described as follows:

Commencing at a bronze disc monument for U.S. Coast and Geodetic Survey Station 1062, "Slow"; thence North 88° 00' 41.5" West 5655.63 feet to a bronze disc monument for U.S. Coast and Geodetic Survey Station 1043, "Onofre-2"; thence North 77° 43' 11" East 2,431.34 feet to the Southwest corner of PARCEL ONE described in the deed to Lenny S. Smith, et ux recorded September 30, 1982 as Document No. 41163 of Official Records of said County, said Southwest corner being the TRUE POINT OF BEGINNING; thence, along the lines described in said PARCEL ONE the following 21 courses which are to contain all of said PARCEL ONE:

| | | |
|---|---|---|
| 1st North 19° 16' 09" West | 1,683.99 feet; thence |
| 2nd North 89° 37' 48" East | 70.00 feet; thence |
| 3rd South 55° 05' 49" East | 251.08 feet; thence |
| 4th North 85° 36' 06" East | 355.86 feet; thence |
| 5th North 68° 42' 20" East | 181.99 feet; thence |
| 6th North 58° 58' 46" East | 313.83 feet; thence |
| 7th South 87° 41' 10" East | 320.33 feet; thence |
| 8th South 66° 17' 40" East | 257.37 feet; thence |
| 9th South 32° 38' 44" East | 337.06 feet; thence |
| 10th South 07° 13' 28" West | 151.32 feet; thence |
| 11th South 68° 20' 02" East | 453.07 feet; thence |
| 12th North 37° 16' 39" East | 221.01 feet; thence |
| 13th South 86° 17' 04" East | 70.18 feet; thence |
| 14th South 33° 01' 51" East | 231.60 feet; thence |
| 15th South 88° 36' 27" East | 325.13 feet; thence |
| 16th North 69° 18' 25" East | 287.90 feet; thence |
| 17th North 89° 37' 48" East | 179.99 feet; thence |
| 18th South 19° 26' 31" East | 850.26 feet; thence |
| 19th South 77° 39' 45" West | 1,263.95 feet; thence |
| 20th North 89° 13' 59" West | 905.38 feet; thence |
| 21st North 89° 46' 02" West | 900.51 feet to the TRUE |

POINT OF BEGINNING and containing 91.52 acres.

Excepting and reserving therefrom unto Grantor the following seven (7) Parcels:

PARCEL ONE:

Commencing at said Southwest corner of PARCEL ONE in the deed to Smith; thence, along the 21st course described above, South 89° 46' 02" East 450.00 feet to the TRUE POINT OF BEGINNING; thence

| | | |
|---|---|---|
| 1st North 01° 23' 08" East | 370.70 feet; thence |
| 2nd North 06° 08' 53" East | 371.99 feet; thence |
| 3rd South 76° 38' 25" East | 2,003.01 feet; thence |
| 4th South 29° 46' 12" West | 199.08 feet to the 19th |

course described above; thence, along the 19th, 20th, and 21st courses described above.

| | | |
|---|---|---|
| 5th South 77° 39' 45" West | 555.79 feet; thence |

DISCRSO – 11/04/91 AA

# DESCRIPTION

2

6th North 89° 13' 59" West                         905.38 feet; thence
7th North 89° 46' 02" West                        450.51 feet to the TRUE
POINT OF BEGINNING and containing 22.49 acres.

PARCEL TWO:

Commencing at said Southwest corner of PARCEL ONE in the deed to Smith; thence North 26° 22' 17" East 1664.01 feet to the TRUE POINT OF BEGINNING; thence

1st North 100.00 feet; thence
2nd East 100.00 feet; thence
3rd South 100.00 feet; thence
4th West 100.00 feet to the TRUE POINT OF BEGINNING and containing 0.23 acres.

PARCEL THREE:

A strip of land, 40.00 feet wide, the centerline of which is described as follows;

Beginning at a point in the South line of Parcel 2 described above from which the Southwest corner thereof bears West a distance of 77.33 feet; thence

1st South 03° 23' 58" West 118.69 feet; thence
2nd South 26° 58' 21" West 156.16 feet; thence
3rd South 39° 44' 11" West 47.41 feet; thence
4th South 39° 45' 54" West 142.33 feet; thence
5th South 15° 38' 22" West 161.59 feet; thence
6th South 12° 52' 05" West 205.21 feet to a point in the North line Parcel One described above from which the Northwest corner thereof bears North 76° 38' 25" West a distance of 30.00 feet.

The sidelines of said strip are to be lengthened or shortened to terminate at said South and North lines.

PARCEL FOUR:

Commencing of said Southwest corner of PARCEL ONE in the deed to Smith; thence North 72° 52' 44" East 2,542.19 feet to the TRUE POINT OF BEGINNING; thence

1st North 200.00 feet; thence
2nd East 200.00 feet; thence
3rd South 200.00 feet; thence
4th West 200.00 feet to the TRUE POINT OF BEGINNING and BEGINNING and containing 0.92 acres.

PARCEL FIVE:

A strip of land, 40.00 feet wide, the centerline of which is described as follows:

Beginning at a point in the South line of Parcel Four described above from which

DESCRSO--12/04/91AA

# DESCRIPTION

3

the Southwest corner thereof bears West 74.59 feet; thence

| | |
|---|---|
| 1st South 31° 11' 38" | West 112.01 feet; thence |
| 2nd South 0° 40' 27" | East 120.75 feet; thence |
| 3rd South 1° 16' 15" | East 134.08 feet; thence |
| 4th South 15° 34' 43" | West 119.46 feet to a point in the North |

line of Parcel 1 described above from which the Northwest corner thereof bears South 76° 38' 25" East a distance of 30.00 feet.

The sidelines of said strip are to be lengthened or shortened to terminate at said South and North lines.

PARCEL SIX:

A strip of land, 40.00 feet wide, the centerline of which is described as follows:

Beginning at a point in the West line of PARCEL ONE of said deed to Smith from which the Southwest corner thereof bears South 19° 16' 09" East a distance of 291.05 feet; thence

| | |
|---|---|
| 1st North 40° 45' 16" | East 204.15 feet; thence |
| 2nd North 65° 01' 08" | East 151.98 feet; thence |
| 3rd North 39° 17' 37" | East 133.88 feet; thence |
| 4th South 88° 12' 42" | East 176.72 feet; thence |
| 5th South 34° 13' 41" | East 71.47 feet to a point in the West |

line of Parcel 1 described above from which the Northwest corner thereof bears North 6° 08' 53" East a distance of 207.21 feet.

The sidelines of said strip are to be lengthened or shortened to terminate at said West lines.

PARCEL SEVEN:

A strip of land, 40.00 feet wide, the centerline of which is described as follows:

Beginning at a point in the East line of said PARCEL ONE in the deed to Smith from which the Southeast corner thereof bears South 19° 26' 29" East a distance of 465.46 feet; thence

1st South 63° 11' 55" West 98.60 feet to the beginning of a curve concave Southeasterly having a radius of 45.00 feet; thence

2nd Southwesterly along said curve through a central angle of 48° 35' 47" an arc distance of 38.17 feet; thence

3rd South 14° 36' 08" West 127.24 feet; thence

4th South 15° 09' 23" East 154.14 feet to the beginning of a curve concave Northwesterly having a radius of 80.00 feet; thence

DESCRSO--11/04/71.AA

# DESCRIPTION

4

5th Southwesterly along said curve through a central angle of 92° 33' 45" an arc distance of 129.24 feet; thence

6th South 77° 24' 22" West 148.26 feet; thence

7th South 78° 29' 29" West 133.15 feet; thence

8th South 75° 29' 23" West 59.47 feet to a point in the East line of Parcel 1 described above from which the Southeast thereof bears South 29° 46' 12" West 83.25 feet.

The sidelines of said strip are to be lengthened or shortened to terminate at said East lines.

The hereinabove legal description is further shown on the map labeled Attachment 1 "Sketch to Accompany Legal Description" which is attached hereto and made a part hereof.

I declare under penalty of perjury that the foregoing is a true and correct copy of the portions of this document which are not photographically reproducible.

Executed at ___Santa Barbara, Ca___ on ___March 18___, 19__99__.

PENALTY.PERJURY

Signature of Declarant

DESCRSO-12/04/91AA

**EXHIBIT D**

| | | | |
|---|---|---|---|
| 99-021853 | : | Rec Fee | 32.00 |
| Recorded | : | AU2 | 2.00 |
| Official Records | : | COP | 5.50 |
| Co Santa Barbara | : | Check | 39.50 |
| Kenneth A Pettit | : | | |
| Recorder | : | | |
| Larry Herrera | : | | |
| Assistant | : | | |
| 2:00pm 18-Mar-99 | : | PUBL | BB  10 |

RECORDING REQUESTED BY
CHICAGO TITLE

WHEN RECORDED RETURN

Chevron U.S.A. Inc.
646 County Square Drive
Ventura, CA 93003

Assessor's Parcel Number:    81-140-15

## WATER USE AGREEMENT

THIS AGREEMENT ("Agreement") is entered into as of *9-14*  , 1998, by and between COASTAL BAND OF THE CHUMASH NATIONAL, INC. ("CBCN") and CHEVRON U.S.A. INC. ("Chevron).

### WITNESSETH

WHEREAS, CBCN is the owner of certain real property located in the unincorporated area of the County of Santa Barbara, State of California, more particularly described in Exhibit "A" attached hereto and incorporated by reference, hereafter sometimes referred to as the "Property," the "Premises" or the "CBCN Property";

WHEREAS, The Property contains a water well commonly known as Smith Well #2, hereinafter sometimes referred to the "Well";

WHEREAS, Chevron is the owner of certain real property located in the unincorporated area of the County of Santa Barbara, State of California, more particularly described in Exhibit "B" attached hereto and incorporated by reference, hereinafter referred to as the "Smith Property";

WHEREAS, CBCN desires to grant a license to Chevron to use water from the Well, and Chevron desires to acquire use of the Well, and easements necessary to use water from the Well for the Smith Property;

WHEREAS, CBCN and Chevron further desire to limit the ground water extractions in Canada de las Zorrilas Watershed as provided in this agreement, including a restriction on pumping by Chevron and CBCN.

-1-

NOW THEREFOR, FOR VALUABLE CONSIDERATION, the receipt and sufficiency of which is hereby acknowledged, the parties hereto agree as follows:

CBCN does hereby grant to Chevron a license to extract water from Well #2 in an amount equal to the difference between the yearly safe yield that may be withdrawn from the Well, as that amount is determined by methodology approved by Santa Barbara County, and 2.39 acre feet per year. If the safe yield is at any time 2.39 acre feet or less, Chevron or its successors or assigns shall not be entitled to withdraw water from the Well. Chevron's right to extract water shall be limited to providing water for drinking, hygiene, agriculture and other normal use which may be permitted on the Smith Parcel. Chevron may not use the property for any other purpose or business without obtaining CBCN's prior written consent.

CBCN does not warrant the specific quantity or quality of water available from the Well.

CBCN retains the right to withdraw up to two and thirty-nine hundredths (2.39) acre feet of water per year from the Well for use on the CBCN Property.

CBCN agrees not to drill any Well on its property in the Watershed which would physically interfere with the operation of the Well.

The license includes the following incidental rights to use the property: Chevron may enter the CBCN property along existing roads only for the purpose of maintaining, repairing, renewing or repairing a water pipeline from the Well, and access to the Well for maintenance and operations. In exercising these rights, Chevron must use reasonable care and may not unreasonably increase the burden on the CBCN property.

Chevron shall not commit or suffer to be committed any waste on CBCN's property or any nuisance or other acts or thing which may injure or damage CBCN's property, except for ordinary wear and tear.

## GENERAL PROVISIONS

Warranty. CBCN does not warrant the specific quantity or qualify of water available from the Well, nor the useful life of the well. CBCN shall not be liable for failure of the well to deliver water.

Water Year. Water quantity measurements under this agreement shall be measured on a "Water Year basis." A Water Year means August 1st through July 31st.

Covenant. The covenants, restricts, and provisions herein contained concern the use and responsibility of each party as to their respective interests in the CBCN and Smith Property, including the water rights therein, and shall constitute covenants running with the land within the meaning of California Civil Code Section 1468, binding upon and for the benefit of each party hereto and their respective heirs, executors, administrators, successors, assigns, and Grantees.

-2-

Compliance. Chevron agrees to comply with all Federal, State and local laws, regulations, ordinances and permit conditions regarding its operations hereunder.

Indemnification. Chevron shall indemnify and hold harmless CBCN, its agents and employees from and against any and all loss, damage, injury, liability and claim thereof (including attorney's fees) resulting from Chevron's exercise of any rights granted herein, such indemnity shall not apply to the extent it is void or unenforceable under applicable law or where the loss, damage, injury, liability or claim is the result of such indemnitee's sole negligence or willful misconduct.

Maintenance and Costs. CBCN, or its successors or assigns shall be responsible for the maintenance of the Well. All costs associated with maintaining the well and associated equipment shall be shared by Chevron and CBCN in proportion to the amount of water used by each on a month-to-month basis.

Successors and Assigns. The provisions of this Agreement shall be binding on the parties' successors and assigns. If Chevron desires to provide a portion of the water to which it is entitled under the terms of this agreement to third parties (such as Caltrans or the Gaviota Oil and Gas Plant from the Well), it may use the Well to supply such water, provided that: (1) CBCN agrees to such use; (2) the Well shall be subject to the limitations and conditions contained herein; (3) such use shall be at the sole cost, risk and expense of the third party and Chevron; (4) such use shall not increase the liability or obligation of CBCN hereunder; and (5) in no event shall such third party make any claim, directly or indirectly, against CBCN or attempt to hold CBCN liable for any breach of their agreement or other failure of the system.

No partnership. Nothing contained in this agreement and no action by the parties hereto shall be deemed or construed to create the relationship of principal and agent, or a partnership or a joint venture or any association between or among any of the parties hereto.

Severability. If any provision of this agreement is invalid or unenforceable, the remaining provisions of this agreement will not be affected thereby and each provision of this agreement will be valid and enforceable to the fullest extent permitted by law.

Waiver. The waiver by any party of any covenant or promise to be kept or performed by the other party shall not be construed to be a waiver of a subsequent covenant or promise of this Agreement.

Governing Law. This agreement will be construed in accordance with the laws of the State of California.

Captions. The captions of the paragraphs of this agreement are for convenience only and are not intended to affect the interpretation or construction of the provisions contained herein.

-3-

IN WITHNESS WHEREOF, this WATER USE AGREEMENT has been executed on the dates set forth below.

DATED: _Sept 14, 1998_      COASTAL BAND OF THE CHUMASH NATION, INC.

By:_____

DATED: _9-14-98_      CHEVRON U.S.A. INC.

By:_____

STATE OF CALIFORNIA
COUNTY OF _Santa Barbara_ } S.S.

On _September 14, 1998_ before me,
_Sandra M. Seekin_
a Notary Public in and for said County and State, personally appeared
_Lee Batalon_

personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal

Signature _____

F 2492 (5-91)

| FOR NOTARY SEAL OR STAMP |
| --- |
| SANDRA M. SEEKINS Comm. # 1174370 NOTARY PUBLIC CALIFORNIA Santa Barbara County My Comm. Expires Feb 22, 2002 |

CERTIFICATE OF ACKNOWLEDGEMENT

Staple

Staple

CERTIFICATE OF ACKNOWLEDGMENT

STATE OF CALIFORNIA
COUNTY OF Santa Barbara } S.S.

On Sept 14, 1998 before me,
Ann Verhulst
a Notary Public in and for said County and State, personally appeared
Al White bear

personally known to me (or proved to me on the basis of satisfactory
evidence) to be the person(s) whose name(s) is/are subscribed to the
within instrument and acknowledged to me that he/she/they executed
the same in his/her/their authorized capacity(ies), and that by his/her/their
signature(s) on the instrument the person(s), or the entity upon behalf
of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal

Signature _____

F 2492 (5-91)

FOR NOTARY SEAL OR STAMP

ANN VERHULST
COMM. # 1050703
NOTARY PUBLIC - CALIFORNIA
SANTA BARBARA COUNTY
My Comm. Expires January 29, 1999

EXHIBIT "A"

LEGAL DESCRIPTION

COASTAL BAND OF THE CHUMASH NATION PARCEL

That portion of the Rancho Nuestra Senora Del Refugio in the County of Santa Barbara, State of California, according to the United States patent thereof recorded July 28, 1866, in Book "A" of Patents, Page 17, et seq., records of said County, described as follows:

Beginning at the westerly terminus of that certain course in the northerly line of the land described in the deed to Robert L. Waldron, et. al., recorded June 22, 1970, as Instrument Number 16018, in Book 2312, Page 274 of Official Records of said County, having a bearing and distance of "South 82°22'10" East, 323.88 feet";

Thence 1st, S. 82°22'10" E., along said northerly line, 323.88 feet to an angle point therein;

Thence 2nd, N. 42°21'00" E., continuing along said northerly line, 145.00 feet to an angle point therein;

Thence 3rd, N. 88°45'00" E., continuing along said northerly line, 70.00 feet to an angle point therein;

Thence 4th, S. 55°58'37" E., continuing along said northerly line, 251.10 feet to an angle point therein;

Thence 5th, S. 84°43'18" E., continuing along said northerly line, 355.88 feet to an angle point therein;

Thence 6th, N. 67°49'32" E., continuing along said northerly line, 182.00 feet to an angle point therein;

PROFESSIONAL LAND SURVEYOR
JUSTIN P. HEIGHT
NO. 6167
EXPIRES 3-31-02
STATE OF CALIFORNIA

Page 1 of 3

W.O. 10616.02
July 18, 1998
JPH:jph

Penfield & Smith

Thence 7th, N. 58°0. 8" E., continuing along said northerly line, 313.85 feet to an angle point therein;

Thence 8th, S. 88°33' 3" E., continuing along said northerly line, 320.35 feet to an angle point therein;

Thence 9th, S. 67°10'28" E., continuing along said northerly line, 257.39 feet to an angle point therein;

Thence 10th, S. 33° 32" E., continuing along said northerly line, 337.08 feet to an angle point therein;

Thence 11th, S. 6°40" E., continuing along said northerly line, 151.33 feet to an angle point therein;

Thence 12th, S. 69 2'50" E., continuing along said northerly line, 453.10 feet to an angle point therein;

Thence 13th, leaving said northerly line, S. 74°05'19" E., a distance of 1016.41 feet to a ½-inch iron pipe with tag marked "PLS 6167";

Thence 14th, S. 20°22'06" E., a distance of 265.90 feet to a ½-inch iron pipe with tag marked "PLS 6167";

Thence 15th, S. 22°37'56" E., a distance of 137.48 feet to a ½-inch iron pipe with tag marked "PLS 6167";

Thence 16th, S. 4°25'19" E., a distance of 17.77 feet to a ½-inch iron pipe with tag marked "PLS 6167";

Thence 17th, S. 22°15'50" W., a distance of 15.83 feet to a ½-inch iron pipe with tag marked "PLS 6167";

Thence 18th, S. 37°13'11" W., a distance of 12.43 feet to a ½-inch iron pipe with tag marked "PLS 6167";

Thence 19th, S. 47°40'28" W., a distance of 14.42 feet to a ½-inch iron pipe with tag marked "PLS 6167";

W.O. 10616.02
July 18, 1996
JPH:jph

Page 2 of 3



Thence 20th, S. 58°38'26" W., a distance of 27.23 feet to a ½-inch iron pipe with tag marked "PLS 6167";

Thence 21st, S. 76°54'49" W., a distance of 170.73 feet to a ½-inch iron pipe with tag marked "PLS 6167";

Thence 22nd, N. 78°16'07" W., a distance of 1441.00 feet to a ½-inch iron pipe with tag marked "PLS 6167";

Thence 23rd, S. 25°58'01" W., a distance of 449.87 feet to a ½-inch iron pipe with tag marked "PLS 6167";

Thence 24th, N. 79°59'39" W., a distance of 505.37 feet to a ½-inch iron pipe with tag marked "PLS 6167";

Thence 25th, N. 89°15'07" W., a distance of 793.83 feet to a ½-inch iron pipe with tag marked "PLS 6167";

Thence 26th, N. 25°49'22" W., a distance of 1468.16 feet to the point of beginning.

SURV\LEGAL\10616\TOTAL\BRINK-CBCNQC.doc

W.O. 10616.02
July 18, 1998
JPH:jph

Page 3 of 3

Penfield & Smith

## EXHIBIT "B"

### CHEVRON - SMITH PARCEL LEGAL DESCRIPTION

That portion of the Rancho Nuestra Senora Del Refugio in the County of Santa Barbara, State of California, according to the United States patent thereof recorded July 28, 1866, in Book "A" of Patents, Page 17, et seq., records of said County, described as follows:

Beginning at the easterly terminus of course (m) of Parcel One in the northerly line of the State Highway right-of-way as said line is described in the deed to the State of California recorded January 2, 1957, as Instrument No. 20, in Book 1421, Page 334, of Official Records of said County, having a bearing and distance of "S. 89°30'43" W., 905.16 feet";

Thence 1st, S. 89°30'43" W., along said right-of-way line, 905.16 feet to an angle point therein;

Thence 2nd, S. 88°57'22" W., continuing along said right-of-way line, 900.22 feet to an angle point therein;

Thence 3rd, N. 89°46'15" W., continuing along said right-of-way line, 1400.00 feet to an angle point therein;

Thence 4th, N. 87°17'48" W., continuing along said right-of-way line, 591.12 feet to an angle point therein;

Thence 5th, N. 81°00'52" W., continuing along said right-of-way line, 921.35 feet to an angle point therein;

Thence 6th, leaving said right-of-way line, N. 20°55'24" E., parallel with the westerly line of the land described as "Parcel One" in the deed to Chevron U.S.A. Inc. recorded April 23, 1985, as Instrument No. 85-020437, of Official Records of said County, 1411.43 feet, more or less, to a point on the southerly line of the land described as "Parcel 3" in the Deed of Trust recorded June 22, 1970, as Instrument No. 16027, in Book 2312, Page 327, of Official Records of said County;

*(Professional Land Surveyor seal: JUSTIN P. HEIGHT, NO. 5167, EXPIRES 3-31-02, STATE OF CALIFORNIA)*

W.O. 10616.02
July 18, 1998
JPH:jph

Page 1 of 2 Pages

Penfield & Smith

Thence 7th, S. 84°44'18" E., along said southerly line, 248.03 feet, more or less, to the westerly terminus of that certain course in the northerly line of the land described in the deed to Robert L. Waldron, et. al., recorded June 22, 1970, as Instrument No. 16018, in Book 2312, Page 274, of Official Records of said County, having a bearing and distance of "South 78°09'29" East, 441.47 feet";

Thence 8th, S. 78°09'29" E., along said northerly line, 441.47 feet to an angle therein;

Thence 9th, N. 87°50'26" E., continuing along said northerly line, 315.04 feet to an angle point therein;

Thence 10th, N. 78°05'23" E., continuing along said northerly line, 432.46 feet to an angle point therein;

Thence 11th, leaving said northerly line, S. 25°49'22" E., a distance of 1468.16 feet to a ½-inch iron pipe with tag marked "PLS 6167";

Thence 12th, S. 89°15'07" E., a distance of 793.83 feet to a ½-inch iron pipe with tag marked "PLS 6167";

Thence 13th, S. 79°59'39" E., a distance of 505.37 feet to a ½-inch iron pipe with tag marked "PLS 6167";

Thence 14th, N. 25°58'01" E., a distance of 449.87 feet to a ½-inch iron pipe with tag marked "PLS 6167";

Thence 15th, S. 78°16'07" E., a distance of 677.09 feet to a ½-inch iron pipe with tag marked "PLS 6167";

Thence 16th, South, a distance of 390.00 feet, more or less, to a point on course (L) of Parcel One in said northerly right-of-way line of the State Highway, having a bearing and distance of "S. 76°24'16" W., 1263.64 feet", lying 9.88 feet easterly from the westerly terminus thereof;

Thence 17th, S. 76°24'16" W., along said course, 9.88 feet to the point of beginning.

SUR V:\LEGAL\10616\TOTAL\SMITHWATERUSE.doc

W.O. 10616.02
July 18, 1998
JPH:jph

Page 2 of 2 Pages

**Penfield & Smith**

**EXHIBIT E**

**EXHIBIT F**

*Respondents:* Owners and operators of small passenger vessels.

*Frequency:* Annually and on occasion.

*Burden Estimate:* The estimated burden has increased from 379,784 hours to 399,420 hours a year due to an increase in the estimated annual number of respondents.

2. *Title:* Plan Approval and Records for Subdivision and Stability Regulations—Title 46 CFR Subchapter S.

*OMB Control Number:* 1625–0064.

*Summary:* The regulations require owners, operators, or masters of certain inspected vessels to obtain and/or post various documents as part of the Coast Guard commercial vessel safety program.

*Need:* Title 46 U.S.C. 3306 authorizes the Coast Guard to prescribe rules for the safety of certain vessels. Title 46 CFR Subchapter S contains the rules regarding subdivision and stability.

*Forms:* N/A.

*Respondents:* Owners, operators, or masters of vessels.

*Frequency:* On occasion.

*Burden Estimate:* The estimated burden has decreased from 13,624 hours to 10,639 hours a year due to a decrease

in the average annual number of respondents.

Dated: January 23, 2014.

**R.E. Day,**

*Rear Admiral, U.S. Coast Guard, Assistant Commandant for Command, Control, Communications, Computers and Information Technology.*

[FR Doc. 2014–01726 Filed 1–28–14; 8:45 am]

**BILLING CODE 9110–04–P**

---

**DEPARTMENT OF THE INTERIOR**

**Fish and Wildlife Service**

**[FWS–R1–ES–2014–N017; FXES11130100000–145–FF01E00000]**

**Endangered Species; Issuance of Permits**

**AGENCY:** Fish and Wildlife Service, Interior.

**ACTION:** Notice of issuance of permits.

**SUMMARY:** We, the U.S. Fish and Wildlife Service, have issued the following permits to conduct certain activities with endangered species under the authority of the Endangered Species Act, as amended (Act).

**ADDRESSES:** Program Manager for Restoration and Endangered Species Classification, Ecological Services, U.S. Fish and Wildlife Service, Pacific Regional Office, 911 NE. 11th Avenue, Portland, OR 97232–4181.

**FOR FURTHER INFORMATION CONTACT:** Colleen Henson, Fish and Wildlife Biologist, at the above address or by telephone (503–231–6131) or fax (503–231–6243).

**SUPPLEMENTARY INFORMATION:** We have issued the following permits to conduct activities with endangered species in response to recovery and interstate commerce permit applications we received under the authority of section 10 of the Act (16 U.S.C. 1531 *et seq.*). These permits were issued between July 1 and December 31, 2013. Each permit listed below was issued only after we determined that it was applied for in good faith; that granting the permit would not be to the disadvantage of the listed species; that the proposed activities were for scientific research or would benefit the recovery or the enhancement of survival of the species, and that the terms and conditions of the permit were consistent with the purposes and policy set forth in the Act.

| Applicant | Permit No. | Date issued | Date expires |
|---|---|---|---|
| Bonneville Power Administration | 037151 | 07/31/2013 | 06/30/2014 |
| Bureau of Land Management | 005901 | 12/09/2013 | 10/14/2016 |
| Directorate of Public Works, U.S. Army | 043638 | 09/30/2013 | 12/18/2015 |
| Ha, Renee Robinette | 09155B | 10/31/2013 | 10/30/2016 |
| Hammond, Paul C | 212061 | 07/03/2013 | 05/25/2017 |
| Hawaii Volcanoes National Park | 018078 | 07/03/2013 | 06/27/2016 |
| Hoku'akua, LLC | 07458B | 11/18/2013 | 11/17/2018 |
| Lomnicky, Gregg A | 103595 | 08/29/2013 | 08/28/2017 |
| NOAA/NMFS Pacific Islands Fisheries Science Center | 72088A | 07/15/2013 | 12/31/2017 |
| Rock, Dennis F | 99618A | 08/29/2013 | 03/12/2014 |
| U.S. Geological Survey | 08551B | 07/15/2013 | 12/31/2016 |
| USDA Forest Service | 010354 | 07/08/2013 | 05/23/2017 |
| USDA Forest Service, Institute of Pacific Islands Forestry | 06459B | 11/18/2013 | 11/17/2017 |

**Availability of Documents**

Documents and other information submitted with these applications are available for review, subject to the requirements of the Privacy Act and Freedom of Information Act, by any party who submits a written request for a copy of such documents (see **FOR FURTHER INFORMATION CONTACT**).

**Authority**

We provide this notice under the authority of section 10 of the Act (16 U.S.C. 1531 *et seq.*).

Dated: January 22, 2014.

**Richard Hannan,**

*Acting Regional Director, Pacific Region, U.S. Fish and Wildlife Service.*

[FR Doc. 2014–01717 Filed 1–28–14; 8:45 am]

**BILLING CODE 4310–55–P**

---

**DEPARTMENT OF THE INTERIOR**

**Bureau of Indian Affairs**

**[145A2100DD/A0T500000.000000/ AAK3000000]**

**Indian Entities Recognized and Eligible To Receive Services From the United States Bureau of Indian Affairs**

**AGENCY:** Bureau of Indian Affairs, Interior.

**ACTION:** Notice.

**SUMMARY:** This notice publishes the current list of 566 tribal entities recognized and eligible for funding and services from the Bureau of Indian Affairs by virtue of their status as Indian tribes. The list is updated from the notice published on May 6, 2013 (78 FR 26384).

**FOR FURTHER INFORMATION CONTACT:** Gail Veney, Bureau of Indian Affairs, Division of Tribal Government Services, Mail Stop 4513–MIB, 1849 C Street NW., Washington, DC 20240. Telephone number: (202) 513–7641.

**SUPPLEMENTARY INFORMATION:** This notice is published pursuant to Section 104 of the Act of November 2, 1994 (Pub. L. 103–454; 108 Stat. 4791, 4792),

and in exercise of authority delegated to the Assistant Secretary—Indian Affairs under 25 U.S.C. 2 and 9 and 209 DM 8.

Published below is a list of federally acknowledged tribes in the contiguous 48 states and Alaska.

Amendments to the list include name changes and name corrections. To aid in identifying tribal name changes and corrections, the tribe's previously listed or former name is included in parentheses after the correct current tribal name. We will continue to list the tribe's former or previously listed name for several years before dropping the former or previously listed name from the list.

The listed Indian entities are acknowledged to have the immunities and privileges available to federally recognized Indian tribes by virtue of their government-to-government relationship with the United States as well as the responsibilities, powers, limitations and obligations of such tribes. We have continued the practice of listing the Alaska Native entities separately solely for the purpose of facilitating identification of them and reference to them given the large number of complex Native names.

Dated: January 22, 2014.

Kevin K. Washburn,

*Assistant Secretary—Indian Affairs.*

**Indian Tribal Entities Within the Contiguous 48 States Recognized and Eligible To Receive Services From the United States Bureau of Indian Affairs**

Absentee-Shawnee Tribe of Indians of Oklahoma

Agua Caliente Band of Cahuilla Indians of the Agua Caliente Indian Reservation, California

Ak Chin Indian Community of the Maricopa (Ak Chin) Indian Reservation, Arizona

Alabama-Coushatta Tribe of Texas (previously listed as the Alabama-Coushatta Tribes of Texas)

Alabama-Quassarte Tribal Town

Alturas Indian Rancheria, California

Apache Tribe of Oklahoma

Arapaho Tribe of the Wind River Reservation, Wyoming

Aroostook Band of Micmacs (previously listed as the Aroostook Band of Micmac Indians)

Assiniboine and Sioux Tribes of the Fort Peck Indian Reservation, Montana

Augustine Band of Cahuilla Indians, California (previously listed as the Augustine Band of Cahuilla Mission Indians of the Augustine Reservation)

Bad River Band of the Lake Superior Tribe of Chippewa Indians of the Bad River Reservation, Wisconsin

Bay Mills Indian Community, Michigan

Bear River Band of the Rohnerville Rancheria, California

Berry Creek Rancheria of Maidu Indians of California

Big Lagoon Rancheria, California

Big Pine Paiute Tribe of the Owens Valley (previously listed as the Big Pine Band of Owens Valley Paiute Shoshone Indians of the Big Pine Reservation, California)

Big Sandy Rancheria of Western Mono Indians of California (previously listed as the Big Sandy Rancheria of Mono Indians of California)

Big Valley Band of Pomo Indians of the Big Valley Rancheria, California

Bishop Paiute Tribe (previously listed as the Paiute-Shoshone Indians of the Bishop Community of the Bishop Colony, California)

Blackfeet Tribe of the Blackfeet Indian Reservation of Montana

Blue Lake Rancheria, California

Bridgeport Indian Colony (previously listed as the Bridgeport Paiute Indian Colony of California)

Buena Vista Rancheria of Me-Wuk Indians of California

Burns Paiute Tribe (previously listed as the Burns Paiute Tribe of the Burns Paiute Indian Colony of Oregon)

Cabazon Band of Mission Indians, California

Cachil DeHe Band of Wintun Indians of the Colusa Indian Community of the Colusa Rancheria, California

Caddo Nation of Oklahoma

Cahto Tribe of the Laytonville Rancheria

Cahuilla Band of Mission Indians of the Cahuilla Reservation, California

California Valley Miwok Tribe, California

Campo Band of Diegueno Mission Indians of the Campo Indian Reservation, California

Capitan Grande Band of Diegueno Mission Indians of California: (Barona Group of Capitan Grande Band of Mission Indians of the Barona Reservation, California;

Viejas (Baron Long) Group of Capitan Grande Band of Mission Indians of the Viejas Reservation, California)

Catawba Indian Nation (aka Catawba Tribe of South Carolina)

Cayuga Nation

Cedarville Rancheria, California

Chemehuevi Indian Tribe of the Chemehuevi Reservation, California

Cher-Ae Heights Indian Community of the Trinidad Rancheria, California

Cherokee Nation

Cheyenne and Arapaho Tribes, Oklahoma (previously listed as the Cheyenne-Arapaho Tribes of Oklahoma)

Cheyenne River Sioux Tribe of the Cheyenne River Reservation, South Dakota

Chicken Ranch Rancheria of Me-Wuk Indians of California

Chippewa-Cree Indians of the Rocky Boy's Reservation, Montana

Chitimacha Tribe of Louisiana

Citizen Potawatomi Nation, Oklahoma

Cloverdale Rancheria of Pomo Indians of California

Cocopah Tribe of Arizona

Coeur D'Alene Tribe (previously listed as the Coeur D'Alene Tribe of the Coeur D'Alene Reservation, Idaho)

Cold Springs Rancheria of Mono Indians of California

Colorado River Indian Tribes of the Colorado River Indian Reservation, Arizona and California

Comanche Nation, Oklahoma

Confederated Salish and Kootenai Tribes of the Flathead Reservation

Confederated Tribes and Bands of the Yakama Nation

Confederated Tribes of Siletz Indians of Oregon (previously listed as the Confederated Tribes of the Siletz Reservation)

Confederated Tribes of the Chehalis Reservation

Confederated Tribes of the Colville Reservation

Confederated Tribes of the Coos, Lower Umpqua and Siuslaw Indians

Confederated Tribes of the Goshute Reservation, Nevada and Utah

Confederated Tribes of the Grand Ronde Community of Oregon

Confederated Tribes of the Umatilla Indian Reservation (previously listed as the Confederated Tribes of the Umatilla Reservation, Oregon)

Confederated Tribes of the Warm Springs Reservation of Oregon

Coquille Indian Tribe (previously listed as the Coquille Tribe of Oregon)

Cortina Indian Rancheria of Wintun Indians of California

Coushatta Tribe of Louisiana

Cow Creek Band of Umpqua Tribe of Indians (previously listed as the Cow Creek Band of Umpqua Indians of Oregon)

Cowlitz Indian Tribe

Coyote Valley Band of Pomo Indians of California

Crow Creek Sioux Tribe of the Crow Creek Reservation, South Dakota

Crow Tribe of Montana

Death Valley Timbi-sha Shoshone Tribe (previously listed as the Death Valley Timbi-Sha Shoshone Band of California)

Delaware Nation, Oklahoma

Delaware Tribe of Indians

Dry Creek Rancheria Band of Pomo Indians, California (previously listed as the Dry Creek Rancheria of Pomo Indians of California)

Duckwater Shoshone Tribe of the Duckwater Reservation, Nevada

4750          Federal Register / Vol. 79, No. 19 / Wednesday, January 29, 2014 / Notices

Eastern Band of Cherokee Indians
Eastern Shawnee Tribe of Oklahoma
Elem Indian Colony of Pomo Indians of the Sulphur Bank Rancheria, California
Elk Valley Rancheria, California
Ely Shoshone Tribe of Nevada
Enterprise Rancheria of Maidu Indians of California
Ewiiaapaayp Band of Kumeyaay Indians, California
Federated Indians of Graton Rancheria, California
Flandreau Santee Sioux Tribe of South Dakota
Forest County Potawatomi Community, Wisconsin
Fort Belknap Indian Community of the Fort Belknap Reservation of Montana
Fort Bidwell Indian Community of the Fort Bidwell Reservation of California
Fort Independence Indian Community of Paiute Indians of the Fort Independence Reservation, California
Fort McDermitt Paiute and Shoshone Tribes of the Fort McDermitt Indian Reservation, Nevada and Oregon
Fort McDowell Yavapai Nation, Arizona
Fort Mojave Indian Tribe of Arizona, California & Nevada
Fort Sill Apache Tribe of Oklahoma
Gila River Indian Community of the Gila River Indian Reservation, Arizona
Grand Traverse Band of Ottawa and Chippewa Indians, Michigan
Greenville Rancheria (previously listed as the Greenville Rancheria of Maidu Indians of California)
Grindstone Indian Rancheria of Wintun-Wailaki Indians of California
Guidiville Rancheria of California
Habematolel Pomo of Upper Lake, California
Hannahville Indian Community, Michigan
Havasupai Tribe of the Havasupai Reservation, Arizona
Ho-Chunk Nation of Wisconsin
Hoh Indian Tribe (previously listed as the Hoh Indian Tribe of the Hoh Indian Reservation, Washington)
Hoopa Valley Tribe, California
Hopi Tribe of Arizona
Hopland Band of Pomo Indians, California (formerly Hopland Band of Pomo Indians of the Hopland Rancheria, California)
Houlton Band of Maliseet Indians
Hualapai Indian Tribe of the Hualapai Indian Reservation, Arizona
Iipay Nation of Santa Ysabel, California (previously listed as the Santa Ysabel Band of Diegueno Mission Indians of the Santa Ysabel Reservation)
Inaja Band of Diegueno Mission Indians of the Inaja and Cosmit Reservation, California
Ione Band of Miwok Indians of California

Iowa Tribe of Kansas and Nebraska
Iowa Tribe of Oklahoma
Jackson Rancheria of Me-Wuk Indians of California
Jamestown S'Klallam Tribe
Jamul Indian Village of California
Jena Band of Choctaw Indians
Jicarilla Apache Nation, New Mexico
Kaibab Band of Paiute Indians of the Kaibab Indian Reservation, Arizona
Kalispel Indian Community of the Kalispel Reservation
Karuk Tribe (previously listed as the Karuk Tribe of California)
Kashia Band of Pomo Indians of the Stewarts Point Rancheria, California
Kaw Nation, Oklahoma
Kewa Pueblo, New Mexico (previously listed as the Pueblo of Santo Domingo)
Keweenaw Bay Indian Community, Michigan
Kialegee Tribal Town
Kickapoo Traditional Tribe of Texas
Kickapoo Tribe of Indians of the Kickapoo Reservation in Kansas
Kickapoo Tribe of Oklahoma
Kiowa Indian Tribe of Oklahoma
Klamath Tribes
Koi Nation of Northern California (previously listed as the Lower Lake Rancheria, California)
Kootenai Tribe of Idaho
La Jolla Band of Luiseno Indians, California (previously listed as the La Jolla Band of Luiseno Mission Indians of the La Jolla Reservation)
La Posta Band of Diegueno Mission Indians of the La Posta Indian Reservation, California
Lac Courte Oreilles Band of Lake Superior Chippewa Indians of Wisconsin
Lac du Flambeau Band of Lake Superior Chippewa Indians of the Lac du Flambeau Reservation of Wisconsin
Lac Vieux Desert Band of Lake Superior Chippewa Indians of Michigan
Las Vegas Tribe of Paiute Indians of the Las Vegas Indian Colony, Nevada
Little River Band of Ottawa Indians, Michigan
Little Traverse Bay Bands of Odawa Indians, Michigan
Lone Pine Paiute-Shoshone Tribe (previously listed as the Paiute-Shoshone Indians of the Lone Pine Community of the Lone Pine Reservation, California)
Los Coyotes Band of Cahuilla and Cupeno Indians, California (previously listed as the Los Coyotes Band of Cahuilla & Cupeno Indians of the Los Coyotes Reservation)
Lovelock Paiute Tribe of the Lovelock Indian Colony, Nevada
Lower Brule Sioux Tribe of the Lower Brule Reservation, South Dakota
Lower Elwha Tribal Community (previously listed as the Lower Elwha

Tribal Community of the Lower Elwha Reservation, Washington)
Lower Sioux Indian Community in the State of Minnesota
Lummi Tribe of the Lummi Reservation
Lytton Rancheria of California
Makah Indian Tribe of the Makah Indian Reservation
Manchester Band of Pomo Indians of the Manchester Rancheria, California (previously listed as the Manchester Band of Pomo Indians of the Manchester-Point Arena Rancheria, California)
Manzanita Band of Diegueno Mission Indians of the Manzanita Reservation, California
Mashantucket Pequot Indian Tribe (previously listed as the Mashantucket Pequot Tribe of Connecticut)
Mashpee Wampanoag Tribe (previously listed as the Mashpee Wampanoag Indian Tribal Council, Inc.)
Match-e-be-nash-she-wish Band of Pottawatomi Indians of Michigan
Mechoopda Indian Tribe of Chico Rancheria, California
Menominee Indian Tribe of Wisconsin
Mesa Grande Band of Diegueno Mission Indians of the Mesa Grande Reservation, California
Mescalero Apache Tribe of the Mescalero Reservation, New Mexico
Miami Tribe of Oklahoma
Miccosukee Tribe of Indians
Middletown Rancheria of Pomo Indians of California
Minnesota Chippewa Tribe, Minnesota (Six component reservations: Bois Forte Band (Nett Lake); Fond du Lac Band; Grand Portage Band; Leech Lake Band; Mille Lacs Band; White Earth Band)
Mississippi Band of Choctaw Indians
Moapa Band of Paiute Indians of the Moapa River Indian Reservation, Nevada
Mohegan Indian Tribe of Connecticut
Mooretown Rancheria of Maidu Indians of California
Morongo Band of Mission Indians, California (previously listed as the Morongo Band of Cahuilla Mission Indians of the Morongo Reservation)
Muckleshoot Indian Tribe (previously listed as the Muckleshoot Indian Tribe of the Muckleshoot Reservation, Washington)
Narragansett Indian Tribe
Navajo Nation, Arizona, New Mexico & Utah
Nez Perce Tribe (previously listed as the Nez Perce Tribe of Idaho)
Nisqually Indian Tribe (previously listed as the Nisqually Indian Tribe of the Nisqually Reservation, Washington)
Nooksack Indian Tribe

Northern Cheyenne Tribe of the Northern Cheyenne Indian Reservation, Montana

Northfork Rancheria of Mono Indians of California

Northwestern Band of Shoshoni Nation (previously listed as the Northwestern Band of Shoshoni Nation of Utah (Washakie)

Nottawaseppi Huron Band of the Potawatomi, Michigan (previously listed as the Huron Potawatomi, Inc.)

Oglala Sioux Tribe (previously listed as the Oglala Sioux Tribe of the Pine Ridge Reservation, South Dakota)

Ohkay Owingeh, New Mexico (previously listed as the Pueblo of San Juan)

Omaha Tribe of Nebraska

Oneida Nation of New York

Oneida Tribe of Indians of Wisconsin

Onondaga Nation

Otoe-Missouria Tribe of Indians, Oklahoma

Ottawa Tribe of Oklahoma

Paiute Indian Tribe of Utah (Cedar Band of Paiutes, Kanosh Band of Paiutes, Koosharem Band of Paiutes, Indian Peaks Band of Paiutes, and Shivwits Band of Paiutes) (formerly Paiute Indian Tribe of Utah (Cedar City Band of Paiutes, Kanosh Band of Paiutes, Koosharem Band of Paiutes, Indian Peaks Band of Paiutes, and Shivwits Band of Paiutes))

Paiute-Shoshone Tribe of the Fallon Reservation and Colony, Nevada

Pala Band of Luiseno Mission Indians of the Pala Reservation, California

Pascua Yaqui Tribe of Arizona

Paskenta Band of Nomlaki Indians of California

Passamaquoddy Tribe

Pauma Band of Luiseno Mission Indians of the Pauma & Yuima Reservation, California

Pawnee Nation of Oklahoma

Pechanga Band of Luiseno Mission Indians of the Pechanga Reservation, California

Penobscot Nation (previously listed as the Penobscot Tribe of Maine)

Peoria Tribe of Indians of Oklahoma

Picayune Rancheria of Chukchansi Indians of California

Pinoleville Pomo Nation, California (previously listed as the Pinoleville Rancheria of Pomo Indians of California)

Pit River Tribe, California (includes XL Ranch, Big Bend, Likely, Lookout, Montgomery Creek and Roaring Creek Rancherias)

Poarch Band of Creeks (previously listed as the Poarch Band of Creek Indians of Alabama)

Pokagon Band of Potawatomi Indians, Michigan and Indiana

Ponca Tribe of Indians of Oklahoma

Ponca Tribe of Nebraska

Port Gamble S'Klallam Tribe (previously listed as the Port Gamble Band of S'Klallam Indians)

Potter Valley Tribe, California

Prairie Band Potawatomi Nation (previously listed as the Prairie Band of Potawatomi Nation, Kansas)

Prairie Island Indian Community in the State of Minnesota

Pueblo of Acoma, New Mexico

Pueblo of Cochiti, New Mexico

Pueblo of Isleta, New Mexico

Pueblo of Jemez, New Mexico

Pueblo of Laguna, New Mexico

Pueblo of Nambe, New Mexico

Pueblo of Picuris, New Mexico

Pueblo of Pojoaque, New Mexico

Pueblo of San Felipe, New Mexico

Pueblo of San Ildefonso, New Mexico

Pueblo of Sandia, New Mexico

Pueblo of Santa Ana, New Mexico

Pueblo of Santa Clara, New Mexico

Pueblo of Taos, New Mexico

Pueblo of Tesuque, New Mexico

Pueblo of Zia, New Mexico

Puyallup Tribe of the Puyallup Reservation

Pyramid Lake Paiute Tribe of the Pyramid Lake Reservation, Nevada

Quartz Valley Indian Community of the Quartz Valley Reservation of California

Quechan Tribe of the Fort Yuma Indian Reservation, California & Arizona

Quileute Tribe of the Quileute Reservation

Quinault Indian Nation (previously listed as the Quinault Tribe of the Quinault Reservation, Washington)

Ramona Band of Cahuilla, California (previously listed as the Ramona Band or Village of Cahuilla Mission Indians of California)

Red Cliff Band of Lake Superior Chippewa Indians of Wisconsin

Red Lake Band of Chippewa Indians, Minnesota

Redding Rancheria, California

Redwood Valley or Little River Band of Pomo Indians of the Redwood Valley Rancheria California (previously listed as the Redwood Valley Rancheria of Pomo Indians of California)

Reno-Sparks Indian Colony, Nevada

Resighini Rancheria, California

Rincon Band of Luiseno Mission Indians of the Rincon Reservation, California

Robinson Rancheria Band of Pomo Indians, California (previously listed as the Robinson Rancheria of Pomo Indians of California)

Rosebud Sioux Tribe of the Rosebud Indian Reservation, South Dakota

Round Valley Indian Tribes, Round Valley Reservation, California (previously listed as the Round Valley Indian Tribes of the Round Valley Reservation, California)

Sac & Fox Nation of Missouri in Kansas and Nebraska

Sac & Fox Nation, Oklahoma

Sac & Fox Tribe of the Mississippi in Iowa

Saginaw Chippewa Indian Tribe of Michigan

Saint Regis Mohawk Tribe (previously listed as the St. Regis Band of Mohawk Indians of New York)

Salt River Pima-Maricopa Indian Community of the Salt River Reservation, Arizona

Samish Indian Nation (previously listed as the Samish Indian Tribe, Washington)

San Carlos Apache Tribe of the San Carlos Reservation, Arizona

San Juan Southern Paiute Tribe of Arizona

San Manuel Band of Mission Indians, California (previously listed as the San Manual Band of Serrano Mission Indians of the San Manual Reservation)

San Pasqual Band of Dieguено Mission Indians of California

Santa Rosa Band of Cahuilla Indians, California (previously listed as the Santa Rosa Band of Cahuilla Mission Indians of the Santa Rosa Reservation)

Santa Rosa Indian Community of the Santa Rosa Rancheria, California

Santa Ynez Band of Chumash Mission Indians of the Santa Ynez Reservation, California

Santee Sioux Nation, Nebraska

Sauk-Suiattle Indian Tribe

Sault Ste. Marie Tribe of Chippewa Indians, Michigan

Scotts Valley Band of Pomo Indians of California

Seminole Tribe of Florida (previously listed as the Seminole Tribe of Florida (Dania, Big Cypress, Brighton, Hollywood & Tampa Reservations))

Seneca Nation of Indians (previously listed as the Seneca Nation of New York)

Seneca-Cayuga Tribe of Oklahoma

Shakopee Mdewakanton Sioux Community of Minnesota

Shawnee Tribe

Sherwood Valley Rancheria of Pomo Indians of California

Shingle Springs Band of Miwok Indians, Shingle Springs Rancheria (Verona Tract), California

Shinnecock Indian Nation

Shoalwater Bay Indian Tribe of the Shoalwater Bay Indian Reservation (previously listed as the Shoalwater Bay Tribe of the Shoalwater Bay Indian Reservation, Washington)

Shoshone Tribe of the Wind River Reservation, Wyoming

Shoshone-Bannock Tribes of the Fort Hall Reservation

Shoshone-Paiute Tribes of the Duck Valley Reservation, Nevada
Sisseton-Wahpeton Oyate of the Lake Traverse Reservation, South Dakota
Skokomish Indian Tribe (previously listed as the Skokomish Indian Tribe of the Skokomish Reservation, Washington)
Skull Valley Band of Goshute Indians of Utah
Smith River Rancheria, California
Snoqualmie Indian Tribe (previously listed as the Snoqualmie Tribe, Washington)
Soboba Band of Luiseno Indians, California
Sokaogon Chippewa Community, Wisconsin
Southern Ute Indian Tribe of the Southern Ute Reservation, Colorado
Spirit Lake Tribe, North Dakota
Spokane Tribe of the Spokane Reservation
Squaxin Island Tribe of the Squaxin Island Reservation
St. Croix Chippewa Indians of Wisconsin
Standing Rock Sioux Tribe of North & South Dakota
Stillaguamish Tribe of Indians of Washington (previously listed as the Stillaguamish Tribe of Washington)
Stockbridge Munsee Community, Wisconsin
Summit Lake Paiute Tribe of Nevada
Suquamish Indian Tribe of the Port Madison Reservation
Susanville Indian Rancheria, California
Swinomish Indian Tribal Community (previously listed as the Swinomish Indians of the Swinomish Reservation of Washington)
Sycuan Band of the Kumeyaay Nation
Table Mountain Rancheria of California
Tejon Indian Tribe
Te-Moak Tribe of Western Shoshone Indians of Nevada (Four constituent bands: Battle Mountain Band; Elko Band; South Fork Band and Wells Band)
The Chickasaw Nation
The Choctaw Nation of Oklahoma
The Modoc Tribe of Oklahoma
The Muscogee (Creek) Nation
The Osage Nation (previously listed as the Osage Tribe)
The Quapaw Tribe of Indians
The Seminole Nation of Oklahoma
Thlopthlocco Tribal Town
Three Affiliated Tribes of the Fort Berthold Reservation, North Dakota
Tohono O'odham Nation of Arizona
Tonawanda Band of Seneca (previously listed as the Tonawanda Band of Seneca Indians of New York)
Tonkawa Tribe of Indians of Oklahoma
Tonto Apache Tribe of Arizona
Torres Martinez Desert Cahuilla Indians, California (previously listed as the

Torres-Martinez Band of Cahuilla Mission Indians of California)
Tulalip Tribes of Washington (previously listed as the Tulalip Tribes of the Tulalip Reservation, Washington)
Tule River Indian Tribe of the Tule River Reservation, California
Tunica-Biloxi Indian Tribe
Tuolumne Band of Me-Wuk Indians of the Tuolumne Rancheria of California
Turtle Mountain Band of Chippewa Indians of North Dakota
Tuscarora Nation
Twenty-Nine Palms Band of Mission Indians of California
United Auburn Indian Community of the Auburn Rancheria of California
United Keetoowah Band of Cherokee Indians in Oklahoma
Upper Sioux Community, Minnesota
Upper Skagit Indian Tribe
Ute Indian Tribe of the Uintah & Ouray Reservation, Utah
Ute Mountain Tribe of the Ute Mountain Reservation, Colorado, New Mexico & Utah
Utu Utu Gwaitu Paiute Tribe of the Benton Paiute Reservation, California
Walker River Paiute Tribe of the Walker River Reservation, Nevada
Wampanoag Tribe of Gay Head (Aquinnah)
Washoe Tribe of Nevada & California (Carson Colony, Dresslerville Colony, Woodfords Community, Stewart Community, & Washoe Ranches)
White Mountain Apache Tribe of the Fort Apache Reservation, Arizona
Wichita and Affiliated Tribes (Wichita, Keechi, Waco & Tawakonie), Oklahoma
Wilton Rancheria, California
Winnebago Tribe of Nebraska
Winnemucca Indian Colony of Nevada
Wiyot Tribe, California (previously listed as the Table Bluff Reservation—Wiyot Tribe)
Wyandotte Nation
Yankton Sioux Tribe of South Dakota
Yavapai-Apache Nation of the Camp Verde Indian Reservation, Arizona
Yavapai-Prescott Indian Tribe (previously listed as the Yavapai-Prescott Tribe of the Yavapai Reservation, Arizona)
Yerington Paiute Tribe of the Yerington Colony & Campbell Ranch, Nevada
Yocha Dehe Wintun Nation, California (previously listed as the Rumsey Indian Rancheria of Wintun Indians of California)
Yomba Shoshone Tribe of the Yomba Reservation, Nevada
Ysleta Del Sur Pueblo of Texas
Yurok Tribe of the Yurok Reservation, California
Zuni Tribe of the Zuni Reservation, New Mexico

Native Entities Within the State of Alaska Recognized and Eligible To Receive Services From the United States Bureau of Indian Affairs

Agdaagux Tribe of King Cove
Akiachak Native Community
Akiak Native Community
Alatna Village
Algaaciq Native Village (St. Mary's)
Allakaket Village
Angoon Community Association
Anvik Village
Arctic Village (See Native Village of Venetie Tribal Government)
Asa'carsarmiut Tribe
Atqasuk Village (Atkasook)
Beaver Village
Birch Creek Tribe
Central Council of the Tlingit & Haida Indian Tribes
Chalkyitsik Village
Cheesh-Na Tribe (previously listed as the Native Village of Chistochina)
Chevak Native Village
Chickaloon Native Village
Chignik Bay Tribal Council (previously listed as the Native Village of Chignik)
Chignik Lake Village
Chilkat Indian Village (Klukwan)
Chilkoot Indian Association (Haines)
Chinik Eskimo Community (Golovin)
Chuloonawick Native Village
Circle Native Community
Craig Tribal Association (previously listed as the Craig Community Association)
Curyung Tribal Council
Douglas Indian Association
Egegik Village
Eklutna Native Village
Ekwok Village
Emmonak Village
Evansville Village (aka Bettles Field)
Galena Village (aka Louden Village)
Gulkana Village
Healy Lake Village
Holy Cross Village
Hoonah Indian Association
Hughes Village
Huslia Village
Hydaburg Cooperative Association
Igiugig Village
Inupiat Community of the Arctic Slope
Iqurmuit Traditional Council
Ivanoff Bay Village
Kaguyak Village
Kaktovik Village (aka Barter Island)
Kasigluk Traditional Elders Council
Kenaitze Indian Tribe
Ketchikan Indian Corporation
King Island Native Community
King Salmon Tribe
Klawock Cooperative Association
Knik Tribe
Kokhanok Village
Koyukuk Native Village
Levelock Village
Lime Village

Manley Hot Springs Village
Manokotak Village
McGrath Native Village
Mentasta Traditional Council
Metlakatla Indian Community, Annette Island Reserve
Naknek Native Village
Native Village of Afognak
Native Village of Akhiok
Native Village of Akutan
Native Village of Aleknagik
Native Village of Ambler
Native Village of Atka
Native Village of Barrow Inupiat Traditional Government
Native Village of Belkofski
Native Village of Brevig Mission
Native Village of Buckland
Native Village of Cantwell
Native Village of Chenega (aka Chanega)
Native Village of Chignik Lagoon
Native Village of Chitina
Native Village of Chuathbaluk (Russian Mission, Kuskokwim)
Native Village of Council
Native Village of Deering
Native Village of Diomede (aka Inalik)
Native Village of Eagle
Native Village of Eek
Native Village of Ekuk
Native Village of Elim
Native Village of Eyak (Cordova)
Native Village of False Pass
Native Village of Fort Yukon
Native Village of Gakona
Native Village of Gambell
Native Village of Georgetown
Native Village of Goodnews Bay
Native Village of Hamilton
Native Village of Hooper Bay
Native Village of Kanatak
Native Village of Karluk
Native Village of Kiana
Native Village of Kipnuk
Native Village of Kivalina
Native Village of Kluti Kaah (aka Copper Center)
Native Village of Kobuk
Native Village of Kongiganak
Native Village of Kotzebue
Native Village of Koyuk
Native Village of Kwigillingok
Native Village of Kwinhagak (aka Quinhagak)
Native Village of Larsen Bay
Native Village of Marshall (aka Fortuna Ledge)
Native Village of Mary's Igloo
Native Village of Mekoryuk
Native Village of Minto
Native Village of Nanwalek (aka English Bay)
Native Village of Napaimute
Native Village of Napakiak
Native Village of Napaskiak
Native Village of Nelson Lagoon
Native Village of Nightmute
Native Village of Nikolski
Native Village of Noatak

Native Village of Nuiqsut (aka Nooiksut)
Native Village of Nunam Iqua (previously listed as the Native Village of Sheldon's Point)
Native Village of Nunapitchuk
Native Village of Ouzinkie
Native Village of Paimiut
Native Village of Perryville
Native Village of Pilot Point
Native Village of Pitka's Point
Native Village of Point Hope
Native Village of Point Lay
Native Village of Port Graham
Native Village of Port Heiden
Native Village of Port Lions
Native Village of Ruby
Native Village of Saint Michael
Native Village of Savoonga
Native Village of Scammon Bay
Native Village of Selawik
Native Village of Shaktoolik
Native Village of Shishmaref
Native Village of Shungnak
Native Village of Stevens
Native Village of Tanacross
Native Village of Tanana
Native Village of Tatitlek
Native Village of Tazlina
Native Village of Teller
Native Village of Tetlin
Native Village of Tuntutuliak
Native Village of Tununak
Native Village of Tyonek
Native Village of Unalakleet
Native Village of Unga
Native Village of Venetie Tribal Government (Arctic Village and Village of Venetie)
Native Village of Wales
Native Village of White Mountain
Nenana Native Association
New Koliganek Village Council
New Stuyahok Village
Newhalen Village
Newtok Village
Nikolai Village
Ninilchik Village
Nome Eskimo Community
Nondalton Village
Noorvik Native Community
Northway Village
Nulato Village
Nunakauyarmiut Tribe
Organized Village of Grayling (aka Holikachuk)
Organized Village of Kake
Organized Village of Kasaan
Organized Village of Kwethluk
Organized Village of Saxman
Orutsararmiut Traditional Native Council (previously listed as Orutsararmuit Native Village (aka Bethel))
Oscarville Traditional Village
Pauloff Harbor Village
Pedro Bay Village
Petersburg Indian Association
Pilot Station Traditional Village
Platinum Traditional Village

Portage Creek Village (aka Ohgsenakale)
Pribilof Islands Aleut Communities of St. Paul & St. George Islands
Qagan Tayagungin Tribe of Sand Point Village
Qawalangin Tribe of Unalaska
Rampart Village
Saint George Island (See Pribilof Islands Aleut Communities of St. Paul & St. George Islands)
Saint Paul Island (See Pribilof Islands Aleut Communities of St. Paul & St. George Islands)
Seldovia Village Tribe
Shageluk Native Village
Sitka Tribe of Alaska
Skagway Village
South Naknek Village
Stebbins Community Association
Sun'aq Tribe of Kodiak (previously listed as the Shoonaq' Tribe of Kodiak)
Takotna Village
Tangirnaq Native Village (formerly Lesnoi Village (aka Woody Island))
Telida Village
Traditional Village of Togiak
Tuluksak Native Community
Twin Hills Village
Ugashik Village
Umkumiut Native Village (previously listed as Umkumiute Native Village)
Village of Alakanuk
Village of Anaktuvuk Pass
Village of Aniak
Village of Atmautluak
Village of Bill Moore's Slough
Village of Chefornak
Village of Clarks Point
Village of Crooked Creek
Village of Dot Lake
Village of Iliamna
Village of Kalskag
Village of Kaltag
Village of Kotlik
Village of Lower Kalskag
Village of Ohogamiut
Village of Old Harbor
Village of Red Devil
Village of Salamatoff
Village of Sleetmute
Village of Solomon
Village of Stony River
Village of Venetie (See Native Village of Venetie Tribal Government)
Village of Wainwright
Wrangell Cooperative Association
Yakutat Tlingit Tribe
Yupiit of Andreafski

[FR Doc. 2014–01683 Filed 1–28–14; 8:45 am]

BILLING CODE 4310–4J–P

Order No.: 1409965



Commercial Division
18881 Von Karman Avenue, Suite 500
Irvine, CA  92612
Phone 949-266-0960 Fax 949-553-0442

# PRELIMINARY REPORT

Steven L. Yarmy-Attorney at Law
2595 S Torrey Pines Drive
Las Vegas, NV  89146

Customer Reference:

Order No:       1409965

Title Officer:   David Noble
Phone:          949-266-1631
Fax:            949-553-0442
E-mail:         dnoble@wfgtitleco.com

Property:       APN: 081-140-23-00, Santa Barbara, CA

Dated as of: June 30, 2014 at 7:30 am

**In response to the above referenced application for a policy of title insurance, WFG National Title Insurance Company hereby reports that it is prepared to issue, or cause to be issued, as of the date hereof, a Policy or Policies of Title Insurance of WFG National Title Insurance Company, a South Carolina corporation describing the land and the estate or interest therein hereinafter set forth, insuring against loss which may be sustained by reason of any defect, lien, or encumbrance not shown or referred to as an Exception below or not excluded from coverage pursuant to the printed Schedules, Conditions and Stipulations of said Policy forms.**

**The printed Exceptions and Exclusions from the coverage of said Policy or Policies are set forth in Exhibit One attached. Copies of the Policy forms should be read. They are available from the office which issued this report. Please read the exceptions shown or referred to below and the exceptions and exclusions set forth in Exhibit One of this report carefully. The exceptions and exclusions are meant to provide you with notice of matters which are not covered under the terms of the title insurance policy and should be carefully considered.**

**It is important to note that this preliminary report is not a written representation as to the condition of title and may not list all liens, defects, and encumbrances affecting title to the land.**

**This report (and any supplements or amendments hereto) is issued solely for the purpose of facilitating the issuance of a policy of title insurance and no liability is assumed hereby. If it is desired that liability be assumed prior to the issuance of a policy of title insurance, a Binder or Commitment should be requested.**

---

WFG National Title Insurance Company, a South Carolina corporation

# SCHEDULE "A"

The estate or interest in the land hereinafter described or referred to covered by this report is:

**Fee Simple**

Title to said estate or interest at the date hereof is vested in:

**Coastal Band of the Chumash Nation, a California non-profit corporation, subject to Item Nos. 30, 31 and 32**

The land referred to in this report is situated in the County of Santa Barbara, State of California and is described as follows:

**SEE ATTACHED EXHIBIT "A"**

# SCHEDULE "B"

At the date hereof exception to coverage in addition to the printed exceptions and exclusions contained in said policy form would be as follows:

1.   Property taxes, which are a lien not yet due and payable, including any assessments collected with taxes, to be levied for the fiscal year 2014-2015.

2.   General and Special City and/or County taxes, including any personal property taxes and any assessments collected with taxes, for the fiscal year 2013-2014:

| | |
|---|---|
| 1st Installment: | $227.93, Paid |
| 2nd Installment: | $227.93, Delinquent |
| Penalty: | $52.79 |
| Parcel No.: | 081-140-23-00 |
| Code Area: | 94-001 |

Note: The above delinquent taxes are included in the tax default shown below.

3.   Said property has been declared tax defaulted for non-payment of delinquent taxes for the fiscal year 2013-2014:

Amounts to redeem for the above stated fiscal year (and subsequent years, if any) are:

| | |
|---|---|
| Amount: | $309.13 |
| By: | July 2014 |
| Amount: | $312.55 |
| By: | August 2014 |
| Amount: | $315.97 |
| By: | September 2014 |

Note: Prior to close of escrow please contact Tax Collectors Office to verify amount(s).

4.   The lien of supplemental taxes, if any, assessed pursuant to the provisions of Chapter 3.5 (commencing with section 75) of the Revenue and taxation Code of the State of California.

5.   The liens of bonds and assessments liens, if applicable, collected with the general and special taxes.

6.   Water rights, claims or title to water in or under said land, whether or not shown by the public records

7.   An easement for public utilities and rights incidental thereto in favor of Southern California Edison Company as set forth in a document recorded January 31, 1935 as Instrument No. 784 in Book 325, page 107, of Official Records. Affects a portion of the land.

8.  An easement for public utilities and rights incidental thereto in favor of Southern California Edison Company as set forth in a document recorded April 20, 1955 as Instrument No. 7251 in Book 1310, page 500, of Official Records. Affects a portion of the land.

9.  The ownership of said Land does not include rights of access to or from the street, highway, or freeway abutting said Land, such rights having been relinquished by the document.

    Recorded: January 2, 1957  as Instrument No. 20, in Book 1421 page 334 of Official Records. Affects: The Highway (U.S. Highway 101)

10. A waiver of any claims for any and all damages to said land contiguous to the property conveyed to the State of California for the above mentioned highway, by reason of the location, construction, landscaping or maintenance of said highway, as provided in the foregoing deed.

11. An easement for relocating, reconstructing and maintaining Los Chiqueros Creek Channel and rights incidental thereto in favor of State of California as set forth in a document recorded January 2, 1957 as Instrument No. 20 in Book 1421, page 334, of Official Records. Affects a portion of the land.

12. An easement over a strip of land 50 feet in width, in favor of Texaco, Inc., as provided in that certain lease, dated 06/01/1960, executed by Hollister Estate Company, a corporation, as Lessor, and by Texaco, Inc., a Corporation, et al., as Lessees, recorded June 14, 1960 as Instrument No. 18799, in Book 1753, page 263 of Official Records as said lease was amended by an agreement dated 05/08/1963, between Hollister Estate Company and Texaco, Inc., recorded June 17, 1963 as Instrument No. 25700, in Book 1997, page 132 of Official Records.

13. An easement for public utilities and rights incidental thereto in favor of Southern California Edison Company as set forth in a document recorded October 28, 1960 as Instrument No. 33735 in Book 1793, page 276, of Official Records. Affects a portion of the land.

14. An easement for pipelines, meters and rights incidental thereto in favor of Pacific Lighting Gas Supply Company as set forth in a document recorded June 8, 1962 as Instrument No. 23770 in Book 1933, page 468, of Official Records. Affects a portion of the land.

15. An easement for road and rights incidental thereto in favor of Robert L. Waldron, et al as set forth in a document recorded December 14, 1972 as Instrument No. 48888 in Book 2435, page 162, of Official Records. Affects a portion of the land.

16. The effect of a map purporting to show the land and other property, filed in Book 116, page 64 of Record of Surveys.

17. The effect of a map purporting to show the land and other property, filed in Book 116, page 61 of Record of Surveys.

18. An easement for public utilities and rights incidental thereto in favor of Southern California Edison Company as set forth in a document recorded March 5, 1986 as Instrument No. 86-012525, of Official Records. Affects a portion of the land.

19. An easement for public utilities and rights incidental thereto in favor of Southern California Edison Company as set forth in a document recorded March 5, 1986 as Instrument No. 86-012526, of Official Records. Affects a portion of the land.

20. An easement for pipeline(s) and rights incidental thereto in favor of Celeron Pipeline(s) Company of California as set forth in a document recorded January 12, 1989 as Instrument No. 89-002454, of Official Records. Affects a portion of the land.

21.     An easement for public utilities and rights incidental thereto in favor of Southern California Edison Company as set forth in a document recorded April 16, 1992 as Instrument No. 92-028027, of Official Records. Affects a portion of the land.

22.     The terms and provisions contained in a document entitled "Easement For Well and Water Line and Restrictive Covenant Limiting Water Use", recorded June 23, 1992, as Instrument No. 92-048106, of Official Records.

23.     The terms and provisions contained in a document entitled "Agreement For and Declaration of Protective Covenant", recorded May 3, 1994, as Instrument No. 94-037784, of Official Records.

24.     An instrument entitled: Corporation Grant Deed.

        Executed by: Chevron USA, Inc., a corporation
        In favor of: The Coastal Band of the Chumash Nation, a California nonprofit corporation
        Recorded: March 18, 1999 as Instrument No: 99-021850 of Official Records

        Which among other things provides:

        Grantee accepts said described property upon the express condition that it will use such property for religious or cultural purposes only. Said described real property shall revert back to grantor if grantee uses said real property for any industrial, commercial or residential purposes. It is Grantor's express and sole intent that said described real property be used only for religious or cultural purposes as directed by Grantee for use by those person of Chumash descent, Chumash being a recognized American Indian Tribe of the Central Coast Area of California, whether or not such persons of Chumash descent area affiliated with or members of the Coastal Band of the Chumash Cation.

        Reference is hereby made to said document for full particulars.

25.     The terms, provisions and easement contained in a document entitled "Easement Agreement", recorded March 18, 1999, as Instrument No. 99-021852, of Official Records.

26.     The terms and provisions contained in a document entitled "Water Use Agreement", recorded March 18, 1999, as Instrument No. 99-021853, of Official Records.

27.     The terms, provisions and easement contained in a document entitled "Easement Agreement", recorded March 18, 1999, as Instrument No. 99-021854, of Official Records.

28.     The terms, provisions and easement contained in a document entitled "Easement Agreement", recorded March 18, 1999, as Instrument No. 99-021857, of Official Records.

29.     The terms and provisions contained in a documents entitled "Grant Deed", recorded April 1, 2013, as Instrument No. 2013-0022149 and 2013-0022150, both, of Official Records.

30.     The effect of a deed executed by Coastal Band of the Chumash Nation, Grantor(s),  to Southern Chumash Owl Clan, Grantee(s), recorded  April 1, 2013, as Instrument No. 2013-0022149 and 2013-0022150 and May 24, 2013 as Instrument No. 2013-0034916, all of Official Records.

        The requirement that this office be furnished with evidence that the deeds was an absolute conveyance for value, and that there are no other agreements, oral or written, regarding the ownership of the land described herein.

Order No.: 1409965

31.   The effect of a deed executed by Southern Chumash Owl Clan, Grantor(s), to Native Energy Farms, LLC, Grantee(s), recorded October 29, 2013 as Instrument No. 2013-0069951 of Official Records.

The requirement that this office be furnished with evidence that the deed was an absolute conveyance for value, and that there are no other agreements, oral or written, regarding the ownership of the land described herein.

32.   Proceedings pending in the Bankruptcy Court of the U.S. District Court, Clark, Nevada, entitled in Re: Native Energy Farms, LLC, debtor, Case No. 14-13482-ABL, wherein a petition for relief was filed on May 16, 2014.

33.   The lack of a right of access to and from the land.

## END OF EXCEPTIONS

# EXHIBIT  "A"

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE COUNTY OF SANTA BARBARA, STATE OF CALIFORNIA, AND IS DESCRIBED AS FOLLOWS:

THAT PORTION OF THE RANCHO NUESTRA SENORA DEL REFUGIO IN THE COUNTY OF SANTA BARBARA, STATE OF CALIFORNIA, ACCORDING TO THE UNITED STATES PATENT THEREOF RECORDED JULY 28, 1866, IN BOOK "A" OF PATENTS, PAGE 17, ET SEQ., RECORDS OF SAID COUNTY, DESCRIBED AS FOLLOWS:

BEGINNING AT THE WESTERLY TERMINUS OF THAT CERTAIN COURSE IN THE NORTHERLY LINE OF THE LAND DESCRIBED IN THE DEED TO ROBERT L. WALDRON, ET AL., RECORDED JUNE 22, 1970 AS INSTRUMENT NUMBER 16018, IN BOOK 2312, PAGE 274 OF OFFICIAL RECORDS OF SAID COUNTY, HAVING A BEARING AND DISTANCE OF "SOUTH 82° 22' 10" EAST, 323.88 FEET";

THENCE 1ST, S. 82° 22' 10" E., ALONG SAID NORTHERLY LINE, 323.88 FEET TO AN ANGLE POINT THEREIN;

THENCE 2ND, N. 42° 21' 00" E., CONTINUING ALONG SAID NORTHERLY LINE, 145.00 FEET TO AN ANGLE POINT THEREIN;

THENCE 3RD, N. 88° 45' 00" E., CONTINUING ALONG SAID NORTHERLY LINE, 70.00 FEET TO AN ANGLE POINT THEREIN;

THENCE 4TH, S. 55° 58' 37" E., CONTINUING ALONG SAID NORTHERLY LINE, 251.10 FEET TO AN ANGLE POINT THEREIN;

THENCE 5TH, N. 84° 43' 18" E., CONTINUING ALONG SAID NORTHERLY LINE, 355.88 FEET TO AN ANGLE POINT THEREIN;

THENCE 6TH, N. 67° 49' 32" E., CONTINUING ALONG SAID NORTHERLY LINE, 182.00 FEET TO AN ANGLE POINT THEREIN;

THENCE 7TH, N. 58° 05' 58" E., CONTINUING ALONG SAID NORTHERLY LINE, 313.85 FEET TO AN ANGLE POINT THEREIN;

THENCE 8TH, S. 88° 33' 58" E., CONTINUING ALONG SAID NORTHERLY LINE, 320.35 FEET TO AN ANGLE POINT THEREIN;

THENCE 9TH, S. 67° 10' 28" E., CONTINUING ALONG SAID NORTHERLY LINE, 257.39 FEET TO AN ANGLE POINT THEREIN;

THENCE 10TH, S. 33° 31' 32" E., CONTINUING ALONG SAID NORTHERLY LINE, 337.08 FEET TO AN ANGLE POINT THEREIN;

THENCE 11TH, S. 6° 20' 40" W., CONTINUING ALONG SAID NORTHERLY LINE, 151.33 FEET TO AN ANGLE POINT THEREIN;

THENCE 12TH, S. 69° 12' 50" E., CONTINUING ALONG SAID NORTHERLY LINE, 453.10 FEET TO AN ANGLE POINT THEREIN;

THENCE 13TH, LEAVING SAID NORTHERLY LINE, S. 74° 05' 19" E., A DISTANCE OF 1016.41 FEET TO A ½ INCH IRON PIPE WITH TAG MARKED "PLS 6167";

THENCE 14TH, S. 20° 22' 06" E., A DISTANCE OF 265.90 FEET TO A ½ INCH IRON PIPE WITH TAG MARKED "PLS 6167";

Order No.: 1409965

THENCE 15TH, S. 22° 37' 56" E., A DISTANCE OF 137.48 FEET TO A ½ INCH IRON PIPE WITH TAG MARKED "PLS 6167";

THENCE 16TH, S. 4° 25' 19" E., A DISTANCE OF 17.77 FEET TO A ½ INCH IRON PIPE WITH TAG MARKED "PLS 6167";

THENCE 17TH, S. 22° 15' 50" W., A DISTANCE OF 15.83 FEET TO A ½ INCH IRON PIPE WITH TAG MARKED "PLS 6167";

THENCE 18TH, S. 37° 13' 11" W., A DISTANCE OF 12.43 FEET TO A ½ INCH IRON PIPE WITH TAG MARKED "PLS 6167";

THENCE 19TH, S. 47° 40' 28" W., A DISTANCE OF 14.42 FEET TO A ½ INCH IRON PIPE WITH TAG MARKED "PLS 6167";

THENCE 20TH, S. 58° 38' 26" W., A DISTANCE OF 27.23 FEET TO A ½ INCH IRON PIPE WITH TAG MARKED "PLS 6167";

THENCE 21ST, S. 76° 54' 49" W., A DISTANCE OF 170.73 FEET TO A ½ INCH IRON PIPE WITH TAG MARKED "PLS 6167";

THENCE 22ND, N. 78° 16' 07" W., A DISTANCE OF 1441.00 FEET TO A ½ INCH IRON PIPE WITH TAG MARKED "PLS 6167";

THENCE 23RD, S. 25° 58' 01" W., A DISTANCE OF 449.87 FEET TO A ½ INCH IRON PIPE WITH TAG MARKED "PLS 6167";

THENCE 24TH, N. 79° 59' 39" W., A DISTANCE OF 505.37 FEET TO A ½ INCH IRON PIPE WITH TAG MARKED "PLS 6167";

THENCE 25TH, N. 89° 15' 07" W., A DISTANCE OF 793.83 FEET TO A ½ INCH IRON PIPE WITH TAG MARKED "PLS 6167";

THENCE 26TH, N. 25° 49' 22" W., A DISTANCE OF 1468.16 FEET TO THE POINT OF BEGINNING.

PURSUANT TO THE LOT LINE ADJUSTMENT 94-LA-10, SHOWN AS PARCEL F, RECORDED MARCH 18, 1999 AS INSTRUMENT NO. 99-021842 AND RE-RECORDED NOVEMBER 18, 1999 AS INSTRUMENT NO. 99-091651 BOTH OF OFFICAL RECORDS.

APN: 081-140-23-00

---

WFG National Title Insurance Company, a South Carolina corporation

# NOTES AND REQUIREMENTS

1.  **This Company will require the following documents in order to insure a conveyance or encumbrance by the limited liability company named below:**

    **Limited Liability Company:  Native Energy Farms, LLC**

    **(a) A certified copy of the articles of organization (LLC-1), and any amendments (LLC-2) or restatement (LLC-10) to be recorded in the appropriate county.**
    **(b) A copy of the operating agreement and any amendment.**
    **(c) Other requirements that the Company may set forth following its review of said documents.**

2.  **According to the latest available equalized assessment roll in the office of the county tax assessor, there is located on the land a(n) Vacant land known as APN: 081-140-23-00, Santa Barbara, CA..**

3.  **The only conveyances affecting said land, which as shown in the public records within 24 months of the date of this report are:**

    **by Coastal Band of the Chumash Nation, as Grantor and Southern Chumash Owl Clan, as Grantee, recorded April 1, 2013, as Instrument Nos. 2013-0022149 and 2013-0022150 and May 24, 2013 as Instrument No. 2013-0034916, all of Official Records. , of Official Records.**

    **Southern Chumash Owl Clan, as Grantor and Native Energy Farms, LLC, as Grantee, recorded October 29, 2013, as Instrument No. 2013-0069951, of Official Records.**

4.  **Please be advised that our search did not disclose any open deeds of trust of record. If you should have knowledge of any outstanding obligation, please contact your title officer immediately for further review.**

Order No.: 1409965



**INCOMING WIRE INSTRUCTIONS**
**ESCROW TRUST ACCOUNT**

Bank Name:                Union Bank

Routing Number:           122000496
(Domestic and International)

Bank Address              400 California Street
                          San Francisco, CA  94101

Account Number:           0041922014

Account Name              WFG National Title Insurance Company

Account Address:          18881 Von Karman Ave., Suite 500
                          Irvine, CA 92612


**Reference:**               **Please reference file number "1409965" and customer last name ""**

---

WFG National Title Insurance Company, a South Carolina corporation

Order No.: 1409965

# Exhibit One (Rev. 9/6/12)

**CALIFORNIA LAND TITLE ASSOCIATION**

**STANDARD COVERAGE POLICY—1990**

**EXCLUSIONS FROM COVERAGE**

The following matters are expressly excluded from the coverage of this policy and the Company will not pay loss or damage, costs, attorneys' fees or expenses which arise by reason of:

1)   a)  Any law, ordinance or governmental regulation (including but not limited to building or zoning laws, ordinances, or regulations) restricting, regulating, prohibiting or relating (i) the occupancy, use, or enjoyment of the land; (ii) the character, dimensions or location of any improvement now or hereafter erected on the land; (iii) a separation in ownership or a change in the dimensions or area of the land or any parcel of which the land is or was a part; or (iv) environmental protection, or the effect of any violation of these laws, ordinances or governmental regulations, except to the extent that a notice of the enforcement thereof or a notice of a defect, lien, or encumbrance resulting from a violation or alleged violation affecting the land has been recorded in the public records at Date of Policy.

     b)  Any governmental police power not excluded by (a) above, except to the extent that a notice of the exercise thereof or notice of a defect, lien or encumbrance resulting from a violation or alleged violation affecting the land has been recorded in the public records at Date of Policy.

2)   Rights of eminent domain unless notice of the exercise thereof has been recorded in the public records at Date of Policy, but not excluding from coverage any taking which has occurred prior to Date of Policy which would be binding on the rights of a purchaser for value without knowledge.

3)   Defects, liens, encumbrances, adverse claims or other matters:

     a)  whether or not recorded in the public records at Date of Policy, but created, suffered, assumed or agreed to by the insured claimant;

     b)  not known to the Company, not recorded in the public records at Date of Policy, but known to the insured claimant and not disclosed in writing to the Company by the insured claimant prior to the date the insured claimant became an insured under this policy;

     c)  resulting in no loss or damage to the insured claimant;

     d)  attaching or created subsequent to Date of Policy; or

     e)  resulting in loss or damage which would not have been sustained if the insured claimant had paid value for the insured mortgage or for the estate or interest insured by this policy.

4)   Unenforceability of the lien of the insured mortgage because of the inability or failure of the insured at Date of Policy, or the inability or failure of any subsequent owner of the indebtedness, to comply with the applicable doing business laws of the state in which the land is situated.

5)   invalidity or unenforceability of the lien of the insured mortgage, or claim thereof, which arises out of the transaction evidenced by the insured mortgage and is based upon usury or any consumer credit protection or truth in lending law.

6)   Any claim, which arises out of the transaction vesting in the insured the estate of interest insured by this policy or the transaction creating the interest of the insured lender, by reason of the operation of federal bankruptcy, state insolvency or similar creditors' rights laws.

Order No.: 1409965

**EXCEPTIONS FROM COVERAGE—SCHEDULE B, PART I**

This policy does not insure against loss or damage (and the Company will not pay costs, attorneys' fees or expenses) which arise by reason of:

1)  Taxes or assessments which are not shown as existing liens by the records of any taxing authority that levies taxes or assessments on real property or by the public records.

   Proceedings by a public agency which may result in taxes or assessments, or notices of such proceedings, whether or not shown by the records of such agency or by the public records.

2)  Any facts, rights, interests, or claims which are not shown by the public records but which could be ascertained by an inspection of the land which may be asserted by persons in possession thereof.

3)  Easements, liens or encumbrances, or claims thereof, which are not shown by the public records.

4)  Discrepancies, conflicts in boundary lines, shortage in area, encroachments, or any other facts which a correct survey would disclose, and which are not shown by the public records.

5)  a) Unpatented mining claims;  (b) reservations or exceptions in patents or in Acts authorizing the issuance thereof;  (c) water rights, claims or title to water, whether or not the matters excepted under (a), (b) or (c) are shown by the public records.

**CLTA HOMEOWNER'S POLICY OF TITLE INSURANCE (01/01/08))**
**ALTA HOMEOWNER'S POLICY OF TITLE INSURANCE**

**EXCLUSIONS**

In addition to the Exceptions in Schedule B, You are not insured against loss, costs, attorneys' fees, and expenses resulting from:

1)  Governmental police power, and the existence or violation of those portions of any law or government regulation concerning:

   a)  building;

   b)  zoning;

   c)  land use;

   d)  improvements on the Land;

   e)  land division; and

   f)  environmental protection

   This Exclusion does not limit the coverage described in Covered Risk 8.a., 14, 15, 16, 18, 19, 20, 23 or 27.

2)  The failure of your existing structures, or any part of them, to be constructed in accordance with applicable building codes.  This Exclusion does not limit the coverage described in Covered Risk 14 or 15.

3)  The right to take the Land by condemning it.  This Exclusion does not limit the coverage described in Covered Risk 17.

4)  Risks:

   a)  that are created, allowed, or agreed to by You, whether or not they are recorded in the Public Records;

   b)  that are Known to You at the Policy Date, but not to Us, unless they appear in the Public Records at the Policy Date;

   c)  that result in no loss to You; or

---

WFG National Title Insurance Company, a South Carolina corporation

    d) that first occur after the Policy Date - this does not limit the coverage described in Covered Risk 7, 8.e, 25, 26, 27 or 28.

5) Failure to pay value for Your Title.

6) Lack of a right:

    a) to any Land outside the area specifically described and referred to in paragraph 3 of Schedule A; and

    b) in streets, alleys, or waterways that touch the Land.

This Exclusion does not limit the coverage described in Covered Risk 11 or 21.

For Covered Risk 16, 18, 19 and 21:

Your Deductible Amount; Our Maximum Dollar; and Limit of Liability.

Covered Risk 16: 1% of Policy Amount Shown in Schedule A or $2,500 (whichever is less) with a maximum dollar liability of $10,000

Covered Risk 18: 1% of Policy Amount Shown in Schedule A or $5,000 (whichever is less) with a maximum dollar liability of $25,000

Covered Risk 19: 1% of Policy Amount Shown in Schedule A or $5,000 (whichever is less) with a maximum dollar liability of $25,000

Covered Risk 21: 1% of Policy Amount Shown in Schedule A of $2,500 (whichever is less) with a maximum dollar liability of $5,000

**ALTA LOAN POLICY (06/17/06))**

**EXCLUSIONS FROM COVERAGE**

The following matters are expressly excluded from the coverage of this policy and the Company will not pay loss or damage, costs, attorneys' fees or expenses which arise by reason of:

1) a) Any law, ordinance or governmental regulation (including those relating to building and zoning) restricting, regulating, prohibiting or relating to

    (i) the occupancy, use, or enjoyment of the Land;

    (ii) the character, dimensions or location of any improvement erected on the Land;

    (iii) the subdivision of land; or

    (iv) environmental protection, or the effect of any violation of these laws, ordinances or governmental regulations.

This Exclusion 1(a) does not modify or limit the coverage provided under Covered Risk 5.

    b) Any governmental police power.

This Exclusion 1(b) does not modify or limit the coverage provided under Covered Risk 6.

2) Rights of eminent domain.

This Exclusion does not modify or limit the coverage provided under Covered Risk 7 or 8.

3) Defects, liens, encumbrances, adverse claims or other matters:

    a) created, suffered, assumed or agreed to by the Insured Claimant;

    b) not Known to the Company, not recorded in the public records at Date of Policy, but Known to the Insured Claimant and not disclosed in writing to the Company by the Insured Claimant prior to the date the Insured Claimant became an insured under this policy;

    c)  resulting in no loss or damage to the Insured Claimant;

    d)  attaching or created subsequent to Date of Policy (however, this does not modify or limit the coverage provided under Covered Risk 11,13, or 14); or

    e)  resulting in loss or damage that would not have been sustained if the Insured Claimant had paid value for the Insured Mortgage.

4)  Unenforceability of the lien of the Insured Mortgage because of the inability or failure of the Insured to comply with applicable doing-business laws of the state in which the land is situated.

5)  Invalidity or unenforceability in whole or in part of the lien of the Insured Mortgage that arises out of the transaction evidenced by the Insured Mortgage and is based upon usury or any consumer credit protection or truth in lending law.

6)  Any claim, by reason of the operation of federal bankruptcy, state insolvency, or similar creditors' rights laws, that the transaction creating the lien of the Insured Mortgage, is

    a)  a fraudulent conveyance or fraudulent transfer, or

    b)  a preferential transfer for any reason not stated in covered Risk 13(b) of this policy..

7)  Any lien on the Title for real estate taxes or assessments imposed by governmental authority and created or attaching between Date of Policy and the date of recording of the Insured Mortgage in the Public Records.  This Exclusion does not modify or limit the coverage provided under covered Risk 11(b).


**EXCEPTIONS FROM COVERAGE**

This policy does not insure against loss or damage (and the Company will not pay costs, attorneys' fees or expenses) which arise by reason of:

PART 1
SECTION ONE:

1)  a)  Taxes or assessments that are not shown as existing liens by the records of any taxing authority that levies taxes or assessments on real property or by the Public Records;

    b)  Proceedings by a public agency that may result in taxes or assessments, or notices of such proceedings, whether or not shown by the records of such agency or by the Public Records.

2)  Any facts, rights, interests or claims that are not shown by the Public Records but that could be ascertained by an inspection of the Land or that may be asserted by persons in possession of the Land.

3)  Easements, liens or encumbrances, or claims thereof, not shown by the Public Records.

4)  Any encroachment, encumbrance, violation, variation, or adverse circumstance affecting the Title that would be disclosed by an accurate and complete land survey of the Land and not shown by the Public Records.

5)  (a)  Unpatented mining claims; (b) reservations or exceptions in patents or in Acts authorizing the issuance thereof; (c) water rights, claims or title to water, whether or not the matters excepted under (a), (b) or (c) are shown by the Public Records.


**ALTA OWNER'S POLICY (06/17/06)**

**EXCLUSIONS FROM COVERAGE**

The following matters are expressly excluded from the coverage of this policy and the Company will not pay loss or damage, costs, attorneys' fees or expenses which arise by reason of:

1)  a)  Any law, ordinance or governmental regulation (including those relating to building and zoning) restricting, regulating, prohibiting or relating to

    (i) the occupancy, use, or enjoyment of the Land;

---

WFG National Title Insurance Company, a South Carolina corporation

(ii) the character, dimensions or location of any improvement erected on the Land;

(iii) the subdivision of land; or

(iv) environmental protection, or the effect of any violation of these laws, ordinances or governmental regulations.

This Exclusion 1(a) does not modify or limit the coverage provided under Covered Risk 5.

b)  Any governmental police power.

This Exclusion 1(b) does not modify or limit the coverage provided under Covered Risk 6.

2)  Rights of eminent domain.

This Exclusion does not modify or limit the coverage provided under Covered Risk 7 or 8.

3)  Defects, liens, encumbrances, adverse claims or other matters:

a)  created, suffered, assumed or agreed to by the Insured Claimant;

b)  not Known to the Company, not recorded in the public records at Date of Policy, but Known to the Insured Claimant and not disclosed in writing to the Company by the Insured Claimant prior to the date the Insured Claimant became an insured under this policy;

c)  resulting in no loss or damage to the Insured Claimant;

d)  attaching or created subsequent to Date of Policy (however, this does not modify or limit the coverage provided under Covered Risk 9 and 10); or

e)  resulting in loss or damage that would not have been sustained if the Insured Claimant had paid value for the Title.

4)  Any claim, by reason of the operation of federal bankruptcy, state insolvency, or similar creditors' rights laws, that the transaction vesting the Title as shown in Schedule A, is

a)  a fraudulent conveyance or fraudulent transfer, or

b)  a preferential transfer for any reason not stated in covered Risk 9 of this policy..

5)  Any lien on the Title for real estate taxes or assessments imposed by governmental authority and created or attaching between Date of Policy and the date of recording of the deed or other instrument of transfer in the Public Records that vests Title as shown in Schedule A.


## SCHEDULE B
## EXCEPTIONS FROM COVERAGE

This policy does not insure against loss or damage (and the Company will not pay costs, attorneys' fees or expenses) which arise by reason of:

**PART ONE:**

1)  a)  Taxes or assessments that are not shown as existing liens by the records of any taxing authority that levies taxes or assessments on real property or by the Public Records;

b)  Proceedings by a public agency that may result in taxes or assessments, or notices of such proceedings, whether or not shown by the records of such agency or by the Public Records.

2)  Any facts, rights, interests or claims that are not shown by the Public Records but that could be ascertained by an inspection of the Land or that may be asserted by persons in possession of the Land.

3)  Easements, liens or encumbrances, or claims thereof, not shown by the Public Records.

4)  Any encroachment, encumbrance, violation, variation, or adverse circumstance affecting the Title that would be disclosed by an accurate and complete land survey of the Land and not shown by the Public Records.

Order No.: 1409965

5)    (a) Unpatented mining claims; (b) reservations or exceptions in patents or in Acts authorizing the issuance thereof; (c) water rights, claims or title to water, whether or not the matters excepted under (a), (b) or (c) are shown by the Public Records.



**ABOUT YOUR PRIVACY**

At WFG, we believe it is important to protect the privacy and confidences of our customers.  This notice is intended to explain how we collect, use, and protect any information that we may collect.  It will explain the choices you may make about the use of that information.

**What Information Do We Collect About You?**

We collect certain types of information about you.  This may consist of:

* Your name, address, and telephone number.

* Your email address.

* Your social security or government ID numbers.

* Your financial information.

We collect this information from:

* The application or other forms you fill out with us.

* The correspondence you and others direct to us.

* Our transactions with you.

* Others involved in your transaction, including the real estate agent or lender.

In some cases, we collect information from third parties.  For instance, we may receive credit reports from credit agencies.

**The information We Collect About You On Our Website**

When you enter our website, we automatically collect and store certain information.  This consists of:

* Your IP Address

* (Internet Protocol Address) and domain name.

* The type of browser and operating system you use.

* The time of your visit.

* The pages of our site you visit.

If you register with us or fill out an on online survey, we will collect additional personal information, such as your name, telephone number, email address and mailing address.

**Cookie Usage**

In order to provide you with customized service, we make use of "cookies."  Cookies are essentially files that help us identify your computer and respond to it.  You may disable cookies on your own computer, but you may not be able to download online documents unless cookies are enabled.

**How We Use Information**

The information we collect concerning:

* Your browser
* The time and date of your visit
* The web pages or services you accessed

is used for administrative and technical purposes.  For instance, we may use it to count the number of visitors to our site and determine the most popular pages.  We may also use it to review types of technology you are using, determine which link brought you here, assess how our advertisements on other sites are working, and to help with maintenance.

We use information contained in your emails only for the purpose of responding to those emails. If we ask you to fill out any forms or surveys, we will use the information we receive only for the specific purposes indicated in those forms or surveys.

## How Do We Use This Information?

We use the information we collect to respond to your requests.  We may also use it to develop our marketing strategy.  Sometimes we share information about your preferences, and your name and address, with other companies we believe may have may have products of interest to you.

### Your Right to See and Correct Information

If you wish to see the information we collect about you, please contact the Compliance Department at 12909 SW 68th Pkwy, Suite 350, Portland, OR  97223.  If you feel the information is incorrect, please send any corrections to us at 12909 SW 68th Pkwy, Suite 350, Portland, OR  97223, Attn: Compliance Department. We will update your information.

## Children's Policy

We do not knowingly collect information from children under the age of 18.  We delete any information that we discover has been provided by children.

## Security

### --Generally

We make every effort to protect the integrity of your information.  Any personal information you enter into online forms or surveys will be encrypted to ensure it remains private. We limit the right of access to your information to employees that need to use the information to respond to or process your request or transaction.  We also take industry standard (IPSEC) measures to protect our sites from malicious intrusions or hacking.

### --Phishing and Pretexting

As you know, consumers are increasingly targeted by unscrupulous persons attempting to acquire sensitive personal or financial information, by impersonating legitimate businesses.  We will never send you an unsolicited email or other communication requesting your private information.  If you receive a communication directing you to enter your personal information, please disregard the instruction and contact us immediately at Compliance@wfgnationaltitle.com.

## Do Not Track

Because there is not an industry-standard process or defined criteria to permit a user to opt out of tracking their internet access (Do Not Track or DNT), we do not currently respond to the various DNT signals.

## How Can You "Opt Out?"

You can always request us not to send you any marketing material and instruct us not to share your non-public information with third parties.  We will honor those requests, except to the extent that we are legally required to disclose the information.

You can "opt out" of our marketing by either calling 800-385-1590 (toll free) or emailing us at Compliance@wfgnationaltitle.com.  You may also write to us at 12909 SW 68th Pkwy, Suite 350, Portland, OR, 97223 to the attention of Compliance.  Alternatively, you may use the opt out form on our website.

## Opt Out Form

If you wish to exercise your "opt out" rights, and you prefer not to call our toll-free number, you may fill out and send this form to us at 12909 SW 68th Pkwy, Suite 350, Portland, OR  97223.  There is no need to use the form if you have opted out over the phone. If you have sent an opt out form to us previously, there's no need to send in another one, unless you want to make a change to your choices.

Order No.: 1409965

*To exercise your opt out rights, please:*
Indicate your opt out choice by checking one or more boxes:

☐ I do not wish to receive any marketing materials or product announcements from WFG

☐ I do not want any information concerning me to be shared with other companies.

Name: _____

Address: _____

Date: _____

Signature: _____

**How to Contact Us**

If you have any questions about our privacy policy, please contact WFG:

* By email: Compliance@wfgnationaltitle.com

* By telephone:  800-385-1590

* By fax: 503-974-9596

* By mail: 12909 SW 68th Pkwy, Suite 350, Portland, OR  97223

* In person:  12909 SW 68th Pkwy, Suite 350, Portland, OR  97223

**Oregon Residents**

We may not disclose personal or privileged information about you unless we provide you with a disclosure authorization form that is executed by you or your representative and otherwise complies with certain statutory requirements. Any such authorization is not valid for more than 24 months and may be revoked by you at any time, subject to the rights of anyone who relied on the authorization prior to your notice of revocation.

In addition, if your personal or privileged information was collected or received by us in connection with a title insurance transaction, we cannot disclose such information if the disclosure authorization form that you executed is more than one year old or if the requested disclosure is for a purpose other than a purpose expressly permitted by statute.

You have the right at any time to request in writing access to recorded personal information about you that is reasonably described by you and reasonably available to us. Within 30 days of the date of our receipt of any such written request from you, we will inform you of the nature and substance of any such information, permit you to see and copy that information or obtain a copy by mail, disclose the identity, if recorded, of the persons to whom we have disclosed such information during the previous two years, and provide you with a summary of the procedures by which you may request that such information be corrected, amended or deleted.

**WFG FAMILY**
WILLISTON FINANCIAL GROUP LLC
WFG NATIONAL TITLE INSURANCE COMPANY
WFG LENDER SERVICES, LLC
WFGLS TITLE AGENCY OF UTAH, LLC
WFG NATIONAL TITLE COMPANY OF WASHINGTON, LLC
WFG TITLE COMPANY OF CALIFORNIA
WFG NATIONAL TITLE COMPANY OF NEVADA
WFG NATIONAL TITLE COMPANY OF TEXAS, LLC D/B/A WFG NATIONAL TITLE COMPANY
UNIVERSAL TITLE PARTNERS, LLC
VALUTRUST SOLUTIONS, LLC

WFG National Title Insurance Company, a South Carolina corporation

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28